# Exhibit A

Raymond E. Brenneman (CA Bar. No. 333699)
BRENNEMAN APC
1901 Avenue of the Stars, Suite 200
Los Angeles, California 90067
Phone: (310) 870-8088
Email: raymond@brennemanlegal.com

Thomas Maniotis, Esq. (pro hac vice pending)
Equity Legal, PLLC
5201 Blue Lagoon Drive, Fl. 8
Miami, Florida 33126
Phone: (305) 629-3219
tamaniotis@equitylegal.net

Attorneys for Plaintiffs
*EMORY ANDREW TATE III & TRISTAN TATE*

**Electronically FILED by Superior Court of California, County of Los Angeles 8/13/2025 1:39 PM David W. Slayton, Executive Officer/Clerk of Court, By W. Lee, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

EMORY ANDREW TATE III, an Individual; TRISTAN TATE, an Individual;

Plaintiffs,

vs.

META PLATFORMS, INC.; and DOES 1 through 10, inclusive,

Defendant(s).

Case No.: 25SMCV04193

**COMPLAINT FOR DAMAGES FOR**

1. **BREACH OF CONTRACT**
2. **BREACH OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**
3. **TORTIOUS INTERFERENCE**
4. **UNJUST ENRICHMENT**
5. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
6. **CALIFORNIA CIV. CODE § 51(b)**
7. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
8. **MISREPRESENTATION**
9. **PROMISSORY ESTOPPEL**
10. **FRAUD**
11. **VIOLATION OF 42 U.S.C. § 1983**
12. **FALSE LIGHT**

**<u>JURY TRIAL DEMANDED</u>**

## I. INTRODUCTION

1. This case arises from Defendant, Meta Platforms, Inc.'s unlawful and politically motivated decision to deplatform Plaintiffs Andrew Tate and Tristan Tate—two internationally known entrepreneurs, commentators, and media personalities—from its social media platforms.

2. At the time, the Plaintiffs collectively commanded an audience of tens of millions, generated significant revenue through lawful online enterprises, and were among the most visible public figures on Meta's platform.

3. Meta's removal of the Plaintiffs was not an isolated enforcement action grounded in neutral application of its Terms of Use, rather, it was the culmination of a coordinated campaign to suppress, silence, and destroy the reputations and livelihoods of two controversial but law-abiding men.

4. This campaign was carried out not merely by private actors, but in concert with government officials, media operatives, and ideological pressure groups—thus transforming Meta into a state actor for purposes of constitutional liability under 42 U.S.C. § 1983.

5. Meta acted with full knowledge of the power and reach of its platform and deplatformed Plaintiffs without notice, explanation, or any meaningful process, while simultaneously allowing defamatory narratives to metastasize—narratives falsely suggesting Plaintiffs were engaged in human trafficking, organized crime, and sexual exploitation.

6. In doing so, Meta not only violated its contractual obligations and express public commitments to fairness and transparency, it lent its corporate power to a broader state-driven effort to deplatform disfavored viewpoints under the guise of "safety" and "integrity."

7. Meta's conduct followed public pressure from U.S. and international authorities who had, through testimony, hearings, and backchannel communications, demanded that companies like Meta take action against so-called "dangerous" figures—without the benefit of criminal charges, due process, or adjudicated wrongdoing.

8. Meta's leadership has publicly admitted that its content enforcement decisions were influenced by direction or coordination with federal agencies, including the FBI.

9. This alignment with state actors renders Meta's actions subject to constitutional scrutiny.

10. Plaintiffs bring this action to recover for the substantial financial, reputational, and emotional harm inflicted by Meta's wrongful conduct, and to ensure that even the most powerful technology companies remain accountable when they act as instruments of government censorship and suppress constitutionally protected speech in violation of federal and state law.

## II. <u>JURISDICTION AND VENUE</u>

11. This Court has subject matter jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10, as the amount in controversy exceeds $25,000 and claims arise under California law.

12. Plaintiffs Andrew Tate and Tristan Tate are natural persons and residents of Romania, formerly residing in the United Kingdom and the United States. Both plaintiffs maintained prominent, monetized social media accounts on Instagram, a platform owned and operated by Defendant Meta Platforms, Inc.

13. Defendant Meta Platforms, Inc. ("Meta") is a Delaware corporation headquartered in Menlo Park, California. Meta owns and operates Instagram, a major global social media platform.

14. Venue is proper in this County because Defendant, Meta is headquartered and conducts substantial business in this County and a substantial part of the events giving rise to the claims occurred in this County.

/ / /

/ / /

/ / /

/ / /

/ / /

## III. PARTIES

15. Plaintiffs Andrew Tate and Tristan Tate are natural persons and residents of Dubai and Romania. Both plaintiffs maintained prominent, monetized social media accounts on Instagram, a platform owned and operated by Defendant Meta Platforms, Inc.

16. Defendant Meta Platforms, Inc. ("Meta") is a Delaware corporation headquartered in Menlo Park, California. Meta owns and operates Instagram, a major global social media platform.

17. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOE 1 to DOE 10 are unknown to Plaintiffs, who therefore sues such defendants by such fictitious names, and will amend this complaint to show their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon alleges that each of the defendants designated as a DOE is negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages to the Plaintiffs as herein alleged.

18. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants DOE 1 through DOE 10 were agents of each other and of the named defendants and, in doing the things alleged in this complaint, were acting in the scope of such agency and with the permission and consent of Defendant.

## IV. FACTUAL ALLEGATIONS

19. Plaintiffs Andrew Tate and Tristan Tate are dual citizens of the United States and the United Kingdom, internationally recognized as entrepreneurs, media figures, and influencers.

20. Andrew is a former world kickboxing champion who rose to prominence through commentary on masculinity, entrepreneurship, and social issues.

21. Tristan Tate, his brother, is a frequent collaborator in media ventures and has likewise cultivated a strong public presence.

22. Together, they have built a brand and business model heavily reliant on social media engagement and reach.

23. Plaintiffs' ventures include educational platforms, subscription-based content services, and real estate investments.

24. Plaintiffs' online content—disseminated through Instagram, Facebook, TikTok, and other platforms—reached tens of millions of followers and generated substantial income to Plaintiffs through endorsements, affiliate partnerships, and direct monetization.

25. Meta removed both Plaintiffs from Instagram without prior notice, meaningful explanation, or any opportunity to appeal.

26. This termination of Plaintiffs' accounts was in direct violation and breach of the contract and agreement between Plaintiffs and Defendant.

27. This deplatforming not only silenced the Plaintiffs but immediately severed them from critical commercial tools and millions of followers causing them substantial and irreplaceable financial loss and damage.

28. At the time of removal, Andrew Tate maintained the handle @cobratate, and Tristan Tate operated under @talismantate. The other handles maintained by the Plaintiffs were @reachtwr, @trw_global, and @tatepledge.

29. In addition to these high-profile accounts, Plaintiffs also operated other Instagram accounts including @t8cars, which was dedicated solely to automotive photography and car showcases. The @t8cars account contained no political, social, or opinion-based content—it featured only photographs of luxury and performance vehicles owned or admired by Plaintiffs.

30. Despite the apolitical and purely aesthetic nature of certain accounts like @t8cars, Meta disabled such accounts along with Plaintiffs' main accounts, demonstrating a broad and indiscriminate enforcement action that lacked tailoring, process, or justification.

31. This blanket ban and improper termination of the Plaintiffs by Defendant, undermined not only Plaintiffs' expressive rights, but also their legitimate commercial interests tied to those accounts as fully known by Defendant.

32. Meta’s public-facing rationale suggested Plaintiffs were banned for promoting 'dangerous individuals or organizations' or for inciting misogyny, claims that lacked substantiation and were unsupported by adjudicated findings.

33. Meta has never afforded Plaintiffs an opportunity to address or rebut these false and malicious characterizations of Plaintiffs by Defendant.

34. Plaintiffs also maintain that this was part of a broader, ideologically motivated campaign, carried out under governmental and corporate pressure, to marginalize dissenting or controversial viewpoints—particularly those of prominent male figures criticizing modern social norms.

35. Around the time of Defendant’s termination of Plaintiffs’ accounts, both Plaintiffs were subjected to intense international scrutiny.

36. Though arrested in Romania and placed under house arrest in connection with criminal investigations, neither was, or has been, convicted of human trafficking or sexual exploitation.

37. Despite this, Meta and other actors repeatedly invoked these allegations to justify censorship and reputational damage, again with no opportunity for Plaintiffs to question or dispel such false and malicious accusations.

38. These defamatory implications against Plaintiffs were compounded by Meta’s silence and lack of transparency.

39. By refusing to clarify or support its decisions, Meta allowed widespread media narratives to suggest criminality, thereby further defaming Plaintiffs by implication.

40. These actions led to severe reputational damage, the dissolution of business relationships, and the termination of significant monetized ventures.

41. The compounded emotional and financial toll included medical complications.

42. Despite the overwhelming negative media coverage, Plaintiffs retained a large following and vocal public support, especially from those critical of social media censorship.

43. Plaintiffs now seek legal redress to restore their reputations and enforce the legal obligations Meta owed them under contractual and statutory frameworks.

44. At all relevant times, Plaintiffs' relationship with Instagram was governed by the Instagram Terms of Use attached hereto as **Exhibit A**.

45. These Terms governed the enforcement process, the scope of permitted removals, and the rights of users—including notice, consistency, and good faith application.

46. Meta's conduct violated these terms and public assurances of neutrality and procedural fairness.

47. Meta's Terms of Use, Community Guidelines, and Data Policy collectively form the contractual and operational framework by which user accounts are managed.

48. In particular, the Terms of Use agreement states in pertinent part that "These Terms of Use therefore constitute an agreement between you and Meta Platforms, Inc." [Exhibit A, p.1]

49. At all relevant times, Plaintiffs were subject to the Terms of Use (see **Exhibit A**), the Instagram Community Standards (see **Exhibit B**), and Meta's Privacy Policy (see **Exhibit C**). These governing documents explicitly provide users, including Plaintiffs, the right to notice, transparency, and appeal, as well as protections against arbitrary enforcement of the rules of Defendant's platform.

50. In particular, the Instagram Community Standards provide that "If your Instagram account was disabled, you'll see a message telling you when you try to log in. Accounts that don't follow our Community Guidelines or Terms of Use may be disabled without warning. We suggest that you review the Community Guidelines carefully along with the posts on all accounts you've created. Keep in mind, we may permanently remove an account that repeatedly violates the Community Guidelines or Terms of Use. If you think your account was disabled by mistake, you may be able to appeal the decision by opening the app, entering your username and password and following the on-screen instructions." [Terms of Use and Community Standards, Exhibit B]

51. Furthermore, the Community Standards provide for notice and an appellate process

indicating that, “we will let you know when something you posted goes against our Community Standards. Usually, this notice appears in your Feed when you log into Facebook or in your feed on Instagram.” [See Terms of Use, Exhibit A, and Community Standards, Exhibit B].

52. In the Meta Terms of Use, it provides in pertinent part as follows: “Where we take such action we’ll let you know and explain any options you have to request a review…” [Terms of Use, Exhibit A]

53. Contrary to these commitments, Meta, in direct violation of its own rules and agreed contractual terms and conditions, removed Plaintiffs’ Instagram accounts without advance warning, contemporaneous explanation, or access to any internal appeal or reinstatement mechanism. This lack of process stands in direct violation of Meta’s own published policies.

54. Moreover, the deplatforming was not limited to a single account or content flag. Within a 24-hour period, nearly all of Plaintiffs’ presence on Meta’s platforms—including Instagram accounts unrelated to controversial speech—were removed.

55. The scope and speed of this purge demonstrate a coordinated suppression, not individual enforcement.

56. At the time of their removal, Plaintiffs collectively maintained millions of followers across multiple Meta-operated accounts, including but not limited to: @cobratate, @talismantate, and @t8cars.

57. These followers represented not just an audience, but a monetized community from which Plaintiffs derived substantial commercial benefit through engagement, brand partnerships, and content distribution.

58. While Meta portrayed Plaintiffs as having violated its standards, it has not taken similar action against content creators and influencers who express contrary ideological views, including those whose content regularly attacks men, promotes violence, or celebrates controversial political movements. This selective enforcement underscores the viewpoint-based nature of Meta’s actions.

59. Meta’s Terms of Use include a promise to act 'fairly' and 'in good faith,' particularly in decisions impacting access and visibility.

60. The Community Standards emphasize 'consistency' and 'clarity' in enforcement and provide that Meta’s Privacy Policy asserts that users retain access to their data and communications.

61. Each of these core principles was violated when Plaintiffs were summarily banned without notice or other rights provided to Plaintiffs by virtue of the terms of agreement between the parties hereto and the terms of use represented by Defendant to Plaintiffs which formed the basis of the contractual agreement between Plaintiffs and Defendant.

62. The lack of any appeal mechanism or post-removal dialogue left Plaintiffs without recourse, despite the profound professional and reputational damage incurred.

63. Plaintiffs’ businesses and social media reach were constructed lawfully over years and abruptly destroyed in hours.

64. This discriminatory, unexplained, and sweeping enforcement action amounts to both a contractual breach and a knowing collaboration in the suppression of disfavored but lawful speech.

65. All actions taken by Defendant against Plaintiffs as set forth herein were taken in bad faith by Defendant.

66. As of the date of filing this complaint, Meta has refused to clarify or provide a reason for the blanket ban on all accounts associated with Plaintiffs.

67. All conditions precedent to filing this lawsuit have been either satisfied or waived.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
BREACH OF CONTRACT

68. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

69. Plaintiffs entered into a contractual relationship with Meta under Instagram’s Terms of Use [Exhibit A] and Community Standards [Exhibit B], which, in addition to the specific terms and conditions forming the core of the rights and responsibilities of the Plaintiffs and Defendant regarding the Defendant’s social media platform, contained an implied covenant of good faith and fair dealing.

70. The Plaintiffs have fully performed everything required of them under the contracts except for those conditions, covenants and promises excused by reason of the breaches of Defendant, as hereinafter alleged.

71. Meta failed to perform its obligations according to the Terms of Use [Exhibit A] and Community Standards [Exhibit B] by arbitrarily deplatforming Plaintiffs without notice, appeal, or the consistent application of standards.

72. As a result of Meta's breach, Plaintiffs suffered compensatory and consequential damages exceeding $10,000,000.00, the exact amount of which shall be determined at trial.

## SECOND CAUSE OF ACTION
VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200

73. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

74. Meta owns and operates several prominent social media platforms and communications services including Facebook, Instagram, and WhatsApp. Instagram has more than 2.5 billion active users worldwide and generates revenue from advertising estimated to be in excess of $70 billion in 2024. Social media personalities, such as Plaintiffs, receive a portion of this vast advertising revenue by posting content which garners a large viewing audience to which advertising can be disseminated to.

75. Meta engaged in unlawful, unfair, or fraudulent business acts and unfair, deceptive, untrue, or misleading advertising when it willfully terminated Plaintiffs' Instagram and other social media accounts with no cause, justification, or other good faith basis.

76. Meta also engaged in unlawful, unfair, or deceptive business acts, and unfair, deceptive, untrue, or misleading advertising by misrepresenting its content moderation standards, selectively enforcing its rules, and denying due process to Plaintiffs.

77. Further, Meta's actions in committing fraud, violating California Civil Code § 51(b) (Unruh Civil Rights Act) and violating Plaintiffs' First Amendment rights under 42 U.S.C. § 1983, all of which constitute unlawful or fraudulent business acts pursuant to Bus. & Prof. Code § 17200.

78. Defendant's willful actions in the termination, the manner of termination, and the lack of cause for termination of Plaintiffs' Instagram accounts was unfair and deceptive as contrary to its Terms of Use, which governs Defendant's relationship with Plaintiffs.

79. Defendant's actions in its failure to provide Plaintiffs with any justification or means of response or appeal was a fraudulent misrepresentation of its own policies upon which Plaintiffs relied on in agreeing to use Defendant's platform on which Plaintiffs expended significant money and time in the building of their commercial brand which is now significantly and irrevocably damaged due to Defendant's unfair, unlawful, and deceptive conduct.

80. Furthermore, Defendant's fraudulent actions and misrepresentation of their business practices and unfair competition as herein described are likely to and have deceived the public by causing members of the public to join with Defendant's platform based upon the false advertising and representations of fairness in their enforcement of their terms of use to the detriment of those who unknowingly rely on such unfair competition misrepresentations.

81. As a direct, proximate, and foreseeable result of Defendant's wrongful conduct as alleged above, Defendant business acts or practices have caused injury to Plaintiffs and the public; and Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendant as a result of such business acts or practices.

82. Plaintiffs seek compensatory and general damages. Plaintiffs are entitled to damages, restitution and injunctive relief under California law. The resulting reputational damage has led to economic losses exceeding $10,000,000.00.

## THIRD CAUSE OF ACTION
TORTIOUS INTERFERENCE WITH PROSEPCTIVE ECONOMIC ADVANTAGE

83. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

84. Plaintiffs had valid and existing business relationships with sponsors, partners, and consumers whereby Plaintiffs were paid for endorsements, advertising deals, and other commercial

engagements predicated, in part, by Plaintiffs' commercial sponsorship, marketing, or endorsement activities on Defendant's social media platforms. which were disrupted by Meta's deplatforming.

85. Meta was fully aware of these economic business relationships and the current and prospective future economic advantage to Plaintiffs in that Plaintiffs' activities were taking place on Meta's own social media platforms and Meta was aware of the industry practice whereby social media influencers are paid not only from the platform but also by third parties for brand ambassadorship and endorsements.

86. In fact, Defendant unlawfully, unfairly and maliciously terminated Plaintiffs' accounts while falsely accusing Plaintiffs of criminal wrongdoing in order to curry favor with governmental authorities and their user base, knowing full well of the advantageous business relationships of Plaintiffs that would be destroyed and the economic and reputational harm it was causing Plaintiffs by such termination.

87. Defendant's false representation as alleged above, constituted a breach of contract, an unfair trade practice in violation of Business and Professions Code § 17200, a violation of California Civil Code § 51(b) (Unruh Civil Rights Act), and a violation of Plaintiffs' First Amendment rights under 42 U.S.C. § 1983.

88. As a direct result of Defendant's actions, Plaintiffs lost endorsements, advertising deals, and other commercial engagements in excess of $10,000,000.00.

89. The aforementioned acts of Defendant were willful, oppressive, fraudulent, and malicious. Plaintiffs are therefore entitled to punitive damages.

90. Defendant threatens to and unless restrained, will disrupt other business relationships between Plaintiffs and third parties, to Plaintiffs' great irreparable injury, for which damages would not afford adequate relief, in that they would not completely compensate for the injury to Plaintiffs' business reputation and goodwill.

91. Plaintiffs seek compensatory and general damages in excess of $10,000,000.00, the exact amount of which shall be determined according to proof at trial.

**FOURTH CAUSE OF ACTION**
UNJUST ENRICHMENT / QUANTUM MERUIT

92. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

93. Meta monetized Plaintiffs' content and audience for years, using their media presence to drive platform engagement and advertising revenue to and for the benefit of Defendant.

94. In so doing, Plaintiffs have conferred a benefit on the Defendant, which the defendant knowingly accepted under circumstances that make it inequitable for the Defendant to retain the benefit without compensating the Plaintiffs for its value.

95. After deplatforming Plaintiffs without due process or compensation, Meta unjustly retained the economic value generated by Plaintiffs' brand.

96. This constitutes unjust enrichment for which Plaintiffs are entitled to restitution and quantum meruit in an amount, upon information and belief, exceeding $5,000.000.00. Plaintiffs seek compensatory and general damages.

**FIFTH CAUSE OF ACTION**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

97. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

98. Meta's deplatforming of Plaintiffs—combined with defamatory implications and denial of redress—caused severe emotional distress and reputational harm.

99. Meta's conduct was both intentional and grossly negligent, lacking any safeguards or procedures typically afforded to users facing enforcement.

100. Plaintiffs experienced public humiliation, loss of reputation, and emotional anguish attributable to Meta's conduct.

101. Plaintiffs have suffered mental and emotional anguish by extreme anxiety and distress. As a direct result of this conduct, the Plaintiffs suffered both psychological and physical harm, including insomnia, and weight loss provoked by Meta's action.

**SIXTH CAUSE OF ACTION**
VIOLATION OF CIVIL CODE § 51(b) (UNRUH CIVIL RIGHTS ACT)

102. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

103. According to CCP §51(b) "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

104. Meta discriminated against Plaintiffs by denying them access to its services based on Plaintiffs viewpoints and ideological beliefs directed at women in general, however, continued to permit similar viewpoints and ideological beliefs directed at men posted by women.

105. By way of example of the public content posted by women of similar ideology against men, include:

a. SheraSeven (aka Sprinkle Sprinkle Lady): Known for encouraging women to manipulate men for money. Quotes include: "Don't date no broke men. Only date for money, relationships, and transactional." And "If a man asks what you bring to the table, RUN. He's not going to provide so he is NOT the target."

b. Teji Eboigbe (@teji_eboigbe): Offers content like "How to attract any man you like," often with subtext around leveraging appearance and behavior for strategic gain.

c. Ashlyepic (@ashlyepic): Posts include: "If he's not giving all the feels, take the trash out and throw the whole dude away." and "How are men so broke if they don't buy makeup or hair?"

d. @itgirls.only_: Encourages women to emotionally detach to maintain dominance in relationships: "Don't fall in love, make him chase and invest more first."

106. This distinction is strictly gender based and portrays a gender-based discrimination prohibited by California Civil Code Section 51 (CCP §51).

107. As a business establishment in California, Meta is bound by the Unruh Civil Rights Act (CCP §51) to afford equal treatment and cannot selectively exclude users based on disfavored expression based in particular upon the gender of the social media poster.

108. Plaintiffs have suffered significant financial damages as a result of Defendant's wrongful conduct.

109. Meta's actions constitute unlawful discrimination for which Plaintiffs seek compensatory and injunctive relief. As a direct result, Plaintiffs lost endorsements, advertising deals, and other commercial engagements in excess of $10,000,000.00. Plaintiffs seek compensatory and general damages.

## SEVENTH CAUSE OF ACTION
BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

110. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

111. The implied covenant of good faith and fair dealing is a part of the several contracts and agreements between Plaintiffs and Defendant including, but not limited to, the Terms of Use and Community Standards.

112. Among other things, Defendant, in its Terms of Use and Community Standards, promised that there would be notification and a review process so you can understand why we removed the content… "If you believe we made a mistake by removing your content, you usually can let us know, and we'll take another look."

113. Meta violated this implied covenant by deplatforming Plaintiffs arbitrarily and in bad faith, without notice, appeal, or consistent application of standards. Plaintiffs were denied even the ability to login to their accounts so as to review the alleged offending posts and were provided no appeals process or explanation for their deplatforming.

114. Plaintiffs relied on Meta's representations of fair enforcement and neutrality to build their brand, invest time, and monetize their presence.

115. Defendant's conduct and actions against Plaintiffs were both arbitrary and in bad faith.

116. Plaintiffs seek compensatory and general damages. As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered, and continue to suffer, losses related to lost endorsements, advertising deals, and other commercial engagements in an amount in excess of $10,000,000.00.

**EIGHTH CAUSE OF ACTION**
NEGLIGENT MISREPRESENTATION

117. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

118. Defendant made a material misrepresentation of an existing material fact when at such time Defendant knew that such representation were false, or had no reasonable ground or belief that such representation was true and thereby intended to induce Plaintiffs to rely on such representation. Specifically, Meta made false statements in its public policies about neutrality and the availability of appeal, which Plaintiffs relied upon to their detriment when investing time and business resources into their accounts.

119. Plaintiffs, being unaware of the falsity of the representation, acted in reliance on its truth, and that reliance was justifiable and anticipated and intended by Defendant.

120. Plaintiffs sustained substantial and continuing damages as a result of their reliance on the misrepresentations of Defendant.

121. As a result of Meta's misrepresentations, Plaintiffs have sustained financial damages and disruption of business relationships that will continue to cause Plaintiffs damages in the future. As a direct result, Plaintiffs lost endorsements, advertising deals, and other commercial engagements in excess of $10,000,000.00. Plaintiffs seek compensatory and general damages.

**NINTH CAUSE OF ACTION**
PROMISSORY ESTOPPEL

122. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

123. Defendant has made clear and unambiguous promises to Plaintiffs through its Terms of Use and Community Standards, which promises set forth Defendant's obligations to Plaintiffs regarding termination of services.

124. Defendant's representations and promises that it would enforce rules fairly and allow appeals induced Plaintiffs' reliance. By creating their Instagram accounts and investing substantial amounts of time and money to cultivate millions of Instagram followers, Plaintiffs reasonably and foreseeably relied on Defendant's promises contained in the Terms of Use and Community Standards.

125. Defendant's failure to follow those promises caused significant damages to Plaintiffs.

126. Plaintiffs justifiably relied upon these promises to their detriment suffering significant financial and other damages.

127. Plaintiffs' reliance was both reasonable and foreseeable.

128. As a result of Meta's promises, Plaintiffs have sustained financial damages and disruption of business relationships that will continue to cause Plaintiffs damage in the future. As a direct result, Plaintiffs lost endorsements, advertising deals, and other commercial engagements in excess of $10,000,000.00. Plaintiffs seek compensatory and general damages.

## TENTH CAUSE OF ACTION
FRAUD (INTENTIONAL MISREPRESENTATION)

129. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

130. Defendant made a material misrepresentation of an existing material fact when at such time Defendant knew that such representation was false and thereby intended to induce Plaintiffs to rely on such representation. Specifically, Meta knowingly misrepresented the availability and functionality of its content appeal and moderation system.

131. Plaintiffs, being unaware of the falsity of the representation, acted in reliance on its truth in creating their social media accounts with Meta, and that reliance was justifiable and anticipated and intended by Defendant.

132. Plaintiffs sustained substantial and continuing damages as a result of their reliance on the misrepresentations of Defendant.

133. Plaintiffs justifiably relied on those misstatements and suffered financial and other damages and harm as a result of their justifiable reliance on such intentional misrepresentations.

134. As a result of Meta's intentional misrepresentations, Plaintiffs have sustained financial damages and disruption of business relationships that will continue to cause Plaintiffs damages in the future. As a direct result, Plaintiffs lost endorsements, advertising deals, and other commercial engagements in excess of $10,000,000.00. Plaintiffs seek compensatory, punitive, and general damages.

**ELEVENTH CAUSE OF ACTION:**
VIOLATION OF FIRST AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983

135. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

136. Meta acted under color of law when it removed Plaintiffs' accounts following directives, coercion, or encouragement from government actors.

137. These actions constituted state action and resulted in unconstitutional censorship and retaliation.

138. Plaintiffs are entitled to declaratory relief and damages under 42 U.S.C. § 1983. As a result of Meta's actions Plaintiffs have sustained financial damages and disruption of business relationships that will continue to cause Plaintiffs damages in the future. As a direct result, Plaintiffs lost their right to free expression on the platform, endorsements, advertising deals, and other commercial engagements in excess of $10,000,000.00. Plaintiffs seek compensatory and general damages.

**TWELVTH CAUSE OF ACTION**
FALSE LIGHT

139. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

140. Meta, through public statements and implied messaging, falsely portrayed Plaintiffs as violent, misogynistic, and criminal. This implication is highly offensive to a reasonable person. Meta's portrayal in a false light was malicious, as shown by their breach of contract, misrepresentation and fraud, and lack of following protocols to allow for appeal of the account closure.

141. These representations were published to a wide audience and caused reputational and financial harm. The ban was reported on by media outlets such as NBC, BBC, Business Insider, The Washington Post, and The New York Times.

142. Plaintiffs were never given a chance by Meta to rebut the allegations or access an internal appeal process to mitigate the portrayal in a false light.

143. As a result of Meta's portrayal of Plaintiffs in a false light, Plaintiffs have sustained financial damages and disruption of business relationships that will continue to cause Plaintiffs damages in the future. As a direct result, Plaintiffs lost endorsements, advertising deals, and other commercial engagements in excess of $10,000,000.00. Plaintiffs seek compensatory, punitive, and general damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

144. Compensatory damages in an amount exceeding $50,000,000, including general, special, and economic damages for harm to reputation, emotional distress, business interference, and misappropriation;

145. Punitive and exemplary damages in an amount to be determined at trial, sufficient to punish Defendant for its willful, malicious, and oppressive conduct and to deter similar future conduct;

146. Costs, attorney's fees, and pre- and post-judgment interest;

147. Such other and further relief as the Court may deem just and proper.

## VII. DEMAND FOR JURY TRIAL

148. Plaintiff demands a trial by jury on all triable issues.

DATED: August 8th, 2025

Respectfully Submitted,

**BRENNEMAN APC**

By: Raymond Brenneman
Raymond E. Brenneman, Esq.

1901 Avenue of the Stars, Suite 200
Los Angeles, California 90067
Email: raymond@brennemanlegal.com

**EQUITY LEGAL PLLC**

By: ______________________
Thomas Maniotis, Esq.

5201 Blue Lagoon Drive,
8th Floor
Miami, Florida 33126
Email: tamaniotis@equitylegal.net
*Pro Hac Vice Admission Pending and Filed Contemporaneously with Complaint

*Attorneys for Plaintiffs*

## VERIFICATION

I, EMORY ANDREW TATE III, declare:

I am one of the plaintiffs in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August 8th, 2025 at Dubai, U.A.E.

EMORY ANDREW TATE III

**VERIFICATION**

I, TRISTAN TATE, declare:

I am one of the plaintiffs in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August 8th, 2025 at Dubai, U.A.E.

Tristan Tate

______________________________
TRISTAN TATE

# EXHIBIT A

Help Center

Terms and Policies

# Terms of Use

Copy link

*The Facebook company is now Meta. We've updated our Terms of Use, Data Policy, and Cookies Policy to reflect the new name on January 4, 2022. While our company name has changed, we are continuing to offer the same products, including Instagram from Meta. Our Data Policy and Terms of Use remain in effect, and this name change does not affect how we use or share data. Learn more about Meta and our vision for the metaverse.*

Welcome to Instagram!

These Terms of Use (or "Terms") govern your use of Instagram, except where we expressly state that separate terms (and not these) apply, and provide information about the Instagram Service (the "Service"), outlined below. When you create an Instagram account or use Instagram, you agree to these terms. The Meta Terms of Service do not apply to this Service.

The Instagram Service is one of the Meta Products, provided to you by Meta Platforms, Inc. These Terms of Use therefore constitute an agreement between you and Meta Platforms, Inc.

**ARBITRATION NOTICE: YOU AGREE THAT DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION. WE EXPLAIN SOME EXCEPTIONS AND HOW YOU CAN OPT OUT OF ARBITRATION BELOW.**

The Service includes all of the Instagram products, features, applications, services, technologies, and software that we provide to advance Instagram's mission: To bring you closer to the people and things you love. The Service is made up of the following aspects:

- **Offering personalized opportunities to create, connect, communicate, discover, and share.**
  People are different. We want to strengthen your relationships through shared experiences you actually care about. So we build systems that try to understand who and what you and others care about, and use that information to help you create, find, join, and share in experiences that matter to you. Part of that is highlighting content, features, offers, and accounts you might be interested in, and offering ways for you to experience Instagram, based on things you and others do on and off Instagram.

- **Fostering a positive, inclusive, and safe environment.**
  We develop and use tools and offer resources to our community members that help to make their experiences positive and inclusive, including when we think they might need help. We also have teams and systems that work to combat abuse and violations of our Terms and policies, as well as harmful and deceptive behavior. We use all the information we have-including your information-to try to keep our platform secure. We also may share information about misuse or harmful content with other Meta Companies or law enforcement. Learn more in the Data Policy.

- **Developing and using technologies that help us consistently serve our growing community.**
  Organizing and analyzing information for our growing community is central to our Service. A big part of our Service is creating and using

community. Technologies like artificial intelligence and machine learning give us the power to apply complex processes across our Service. Automated technologies also help us ensure the functionality and integrity of our Service.

- **Providing consistent and seamless experiences across other Meta Company Products.**
  Instagram is part of the Meta Companies, which share technology, systems, insights, and information-including the information we have about you (learn more in the **Data Policy**) in order to provide services that are better, safer, and more secure. We also provide ways to interact across the Meta Company Products that you use, and designed systems to achieve a seamless and consistent experience across the Meta Company Products.

- **Ensuring access to our Service.**
  To operate our global Service, we must store and transfer data across our systems around the world, including outside of your country of residence. The use of this global infrastructure is necessary and essential to provide our Service. This infrastructure may be owned or operated by Meta Platforms, Inc., Meta Platforms Ireland Limited, or their affiliates.

- **Connecting you with brands, products, and services in ways you care about.**
  We use data from Instagram and other Meta Company Products, as well as from third-party partners, to show you ads, offers, and other sponsored content that we believe will be meaningful to you. And we try to make that content as relevant as all your other experiences on Instagram.

- **Research and innovation.**
  We use the information we have to study our Service and collaborate with others on

Help Center

## How Our Service Is Funded

Instead of paying to use Instagram, by using the Service covered by these Terms, you acknowledge that we can show you ads that businesses and organizations pay us to promote on and off the Meta Company Products. We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you.

We show you relevant and useful ads without telling advertisers who you are. We don't sell your personal data. We allow advertisers to tell us things like their business goal and the kind of audience they want to see their ads. We then show their ad to people who might be interested.

We also provide advertisers with reports about the performance of their ads to help them understand how people are interacting with their content on and off Instagram. For example, we provide general demographic and interest information to advertisers to help them better understand their audience. We don't share information that directly identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us specific permission. Learn more about how Instagram ads work here.

You may see branded content on Instagram posted by account holders who promote products or services based on a commercial relationship with the business partner mentioned in their content. You can learn more about this here.

## The Data Policy

Providing our Service requires collecting and using your information. The **Data Policy** explains how we collect, use, and share information across the **Meta Products**. It also explains the many ways you can control your information, including in the **Instagram Privacy and Security Settings**. You must agree to the Data Policy to use Instagram.

Your Commitments

Instagram Features
Manage Your Account
Staying Safe
Privacy, Security and Reporting
Terms and Policies
Community Guidelines
Privacy Policy
Terms of Use
Platform Policy
Cookies Policy
Community Payments Terms
Instagram Purchase Protection Policy

In return for our commitment to provide the Service, we require you to make the below commitments to us.

**Who Can Use Instagram.** We want our Service to be as open and inclusive as possible, but we also want it to be safe, secure, and in accordance with the law. So, we need you to commit to a few restrictions in order to be part of the Instagram community.

- You must be at least 13 years old.
- You must not be prohibited from receiving any aspect of our Service under applicable laws or engaging in payments related Services if you are on an applicable denied party listing.
- We must not have previously disabled your account for violation of law or any of our policies.
- You must not be a convicted sex offender.

**How You Can't Use Instagram.** Providing a safe and open Service for a broad community requires that we all do our part.

- **You can't impersonate others or provide inaccurate information.** You don't have to disclose your identity on Instagram, but you must provide us with accurate and up to date information (including registration information), which may include providing personal data. Also, you may not impersonate someone or something you aren't, and you can't create an account for someone else unless you have their express permission.
- **You can't do anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose.**
- **You can't violate (or help or encourage others to violate) these Terms or our policies, including in particular the**

Help Center

If you post branded content, you must comply with our Branded Content Policies, which require you to use our branded content tool. Learn how to report conduct or content in our Help Center.

- **You can't do anything to interfere with or impair the intended operation of the Service.**
  This includes misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals.

- **You can't attempt to create accounts or access or collect information in unauthorized ways.**
  This includes creating accounts or collecting information in an automated way without our express permission.

- **You can’t sell, license, or purchase any account or data obtained from us or our Service.**
  This includes attempts to buy, sell, or transfer any aspect of your account (including your username); solicit, collect, or use login credentials or badges of other users; or request or collect Instagram usernames, passwords, or misappropriate access tokens.

- **You can't post someone else’s private or confidential information without permission or do anything that violates someone else's rights, including intellectual property rights (e.g., copyright infringement, trademark infringement, counterfeit, or pirated goods).**
  You may use someone else's works under exceptions or limitations to copyright and related rights under applicable law. You represent you own or have obtained all necessary rights to the content you post or share. Learn more, including how to report content that you think infringes your intellectual property rights, **here**.

Help Center

- **You can't use a domain name or URL in your username without our prior written consent.**

**Permissions You Give to Us.** As part of our agreement, you also give us permissions that we need to provide the Service.

- **We do not claim ownership of your content, but you grant us a license to use it.**
  Nothing is changing about your rights in your content. We do not claim ownership of your content that you post on or through the Service and you are free to share your content with anyone else, wherever you want. However, we need certain legal permissions from you (known as a "license") to provide the Service. When you share, post, or upload content that is covered by intellectual property rights (like photos or videos) on or in connection with our Service, you hereby grant to us a non-exclusive, royalty-free, transferable, sub-licensable, worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings). This license will end when your content is deleted from our systems. You can delete content individually or all at once by deleting your account. To learn more about how we use information, and how to control or delete your content, review the Data Policy and visit the Instagram Help Center.

- **Permission to use your username, profile picture, and information about your relationships and actions with accounts, ads, and sponsored content.**
  You give us permission to show your username, profile picture, and information about your actions (such as likes) or relationships (such as follows) next to or in connection with accounts, ads, offers, and other sponsored content that you follow or

sponsored post created by a brand that has paid us to display its ads on Instagram. As with actions on other content and follows of other accounts, actions on sponsored content and follows of sponsored accounts can be seen only by people who have permission to see that content or follow. We will also respect your ad settings. You can learn more here about your ad settings.

- **You agree that we can download and install updates to the Service on your device.**

## Additional Rights We Retain

- If you select a username or similar identifier for your account, we may change it if we believe it is appropriate or necessary (for example, if it infringes someone's intellectual property or impersonates another user).
- If you use content covered by intellectual property rights that we have and make available in our Service (for example, images, designs, videos, or sounds we provide that you add to content you create or share), we retain all rights to our content (but not yours).
- You can only use our intellectual property and trademarks or similar marks as expressly permitted by our **Brand Guidelines** or with our prior written permission.
- You must obtain written permission from us or under an open source license to modify, create derivative works of, decompile, or otherwise attempt to extract source code from us.

## Content Removal and Disabling or Terminating Your Account

(including our **Instagram Community Guidelines**), or we are permitted or required to do so by law. We can refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Meta Products and Meta Company Products) immediately to protect our community or services, or if you create risk or legal exposure for us, violate these Terms of Use or our policies (including our **Instagram Community Guidelines**), if you repeatedly infringe other people's intellectual property rights, or where we are permitted or required to do so by law. We can also terminate or change the Service, remove or block content or information shared on our Service, or stop providing all or part of the Service if we determine that doing so is reasonably necessary to avoid or mitigate adverse legal or regulatory impacts on us. If you believe your account has been terminated in error, or you want to disable or permanently delete your account, consult our **Help Center**. When you request to delete content or your account, the deletion process will automatically begin no more than 30 days after your request. It may take up to 90 days to delete content after the deletion process begins. While the deletion process for such content is being undertaken, the content is no longer visible to other users, but remains subject to these Terms of Use and our Data Policy. After the content is deleted, it may take us up to another 90 days to remove it from backups and disaster recovery systems.

- Content will not be deleted within 90 days of the account deletion or content deletion process beginning in the following situations:
    - where your content has been used by others in accordance with this license and they have not deleted it (in which case this license will continue to apply until that content is deleted); or

complete the deletion as soon as technically feasible; or

- where deletion would restrict our ability to:
  - investigate or identify illegal activity or violations of our terms and policies (for example, to identify or investigate misuse of our products or systems);
  - protect the safety and security of our products, systems, and users;
  - comply with a legal obligation, such as the preservation of evidence; or
  - comply with a request of a judicial or administrative authority, law enforcement, or a government agency;
- in which case, the content will be retained for no longer than is necessary for the purposes for which it has been retained (the exact duration will vary on a case-by-case basis).

- If you delete or we disable your account, these Terms shall terminate as an agreement between you and us, but this section and the section below called "Our Agreement and What Happens if We Disagree" will still apply even after your account is terminated, disabled, or deleted.

## Our Agreement and What Happens if We Disagree

### Our Agreement.

Terms and Developer Policies. If you use certain other features or related services, you will be provided with an opportunity to agree to additional terms that will also become a part of our agreement. For example, if you use payment features, you will be asked to agree to the **Community Payment Terms**. If any of those terms conflict with this agreement, those other terms will govern.

- If any aspect of this agreement is unenforceable, the rest will remain in effect.
- Any amendment or waiver to our agreement must be in writing and signed by us. If we fail to enforce any aspect of this agreement, it will not be a waiver.
- We reserve all rights not expressly granted to you.

**Who Has Rights Under this Agreement.**

- Our past, present, and future affiliates and agents, including Instagram LLC, can invoke our rights under this agreement in the event they become involved in a dispute. Otherwise, this agreement does not give rights to any third parties.
- You cannot transfer your rights or obligations under this agreement without our consent.
- Our rights and obligations can be assigned to others. For example, this could occur if our ownership changes (as in a merger, acquisition, or sale of assets) or by law.

**Who Is Responsible if Something Happens.**

- Our Service is provided "as is," and we can't guarantee it will be safe and secure or will work perfectly all the time. TO THE EXTENT PERMITTED BY LAW, WE ALSO DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY,

- We also don’t control what people and others do or say, and we aren’t responsible for their (or your) actions or conduct (whether online or offline) or content (including unlawful or objectionable content). We also aren’t responsible for services and features offered by other people or companies, even if you access them through our Service.

- Our responsibility for anything that happens on the Service (also called "liability") is limited as much as the law will allow. If there is an issue with our Service, we can't know what all the possible impacts might be. You agree that we won't be responsible ("liable") for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we know they are possible. This includes when we delete your content, information, or account. Our aggregate liability arising out of or relating to these Terms will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

- You agree to defend (at our request), indemnify and hold us harmless from and against any claims, liabilities, damages, losses, and expenses, including without limitation, reasonable attorney's fees and costs, arising out of or in any way connected with these Terms or your use of the Service. You will cooperate as required by us in the defense of any claim. We reserve the right to assume the exclusive defense and control of any matter subject to indemnification by you, and you will not in any event settle any claim without our prior written consent.

**How We Will Handle Disputes.**

- Except as provided below, **you and we agree that any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram ("claim(s)") must be resolved by arbitration on an individual basis.**

relief that would affect other Instagram users. If there is a final judicial determination that any particular claim (or a request for particular relief) cannot be arbitrated in accordance with this provision's limitations, then only that claim (or only that request for relief) may be brought in court. All other claims (or requests for relief) remain subject to this provision.

- Instead of using arbitration, you or we can bring claims in your local "small claims" court, if the rules of that court will allow it. If you don't bring your claims in small claims court (or if you or we appeal a small claims court judgment to a court of general jurisdiction), then the claims must be resolved by binding, individual arbitration. The American Arbitration Association will administer all arbitrations under its Consumer Arbitration Rules. **You and we expressly waive a trial by jury.**

  The following claims don't have to be arbitrated and may be brought in court: disputes related to intellectual property (like copyrights and trademarks), violations of our Platform Policy, or efforts to interfere with the Service or engage with the Service in unauthorized ways (for example, automated ways). In addition, issues relating to the scope and enforceability of the arbitration provision are for a court to decide.

  This arbitration provision is governed by the Federal Arbitration Act.

  You can opt out of this provision within 30 days of the date that you agreed to these Terms. To opt out, you must send your name, residence address, username, email address or phone number you use for your Instagram account, and a clear statement that you want to opt out of this arbitration agreement, and you must send them here: Meta Platforms, Inc. ATTN: Instagram Arbitration Opt-out, 1601 Willow Rd., Menlo Park, CA 94025.

address, username, email address or phone number you use for your Instagram account, a detailed description of the dispute, and the relief you seek. Any Notice of Dispute you send to us should be mailed to Meta Platforms, Inc., ATTN: Instagram Arbitration Filing, 1601 Willow Rd. Menlo Park, CA 94025. Before we commence arbitration, we will send you a Notice of Dispute to the email address you use with your Instagram account, or other appropriate means. If we are unable to resolve a dispute within thirty (30) days after the Notice of Dispute is received, you or we may commence arbitration.

- We will pay all arbitration filing fees, administration and hearing costs, and arbitrator fees for any arbitration we bring or if your claims seek less than $75,000 and you timely provided us with a Notice of Dispute. For all other claims, the costs and fees of arbitration shall be allocated in accordance with the arbitration provider's rules, including rules regarding frivolous or improper claims.

- For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

- The laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions.

**Unsolicited Material.**

We always appreciate feedback or other suggestions, but may use them without any restrictions or obligation to compensate you for them, and are under no obligation to keep them confidential.

Help Center

## Updating These Terms

We may change our Service and policies, and we may need to make changes to these Terms so that they accurately reflect our Service and policies. Unless otherwise required by law, we will notify you (for example, through our Service) before we make changes to these Terms and give you an opportunity to review them before they go into effect. Then, if you continue to use the Service, you will be bound by the updated Terms. If you do not want to agree to these or any updated Terms, you can delete your account, **here**.

Revised: January 4, 2022

**Was this helpful?**

Yes | No

## Related Articles

- **Digital Collectibles Terms of Use**
- **Checkout Methods and Eligibility Requirements**
- **Commerce Eligibility Requirements**
- **Safety Tips**
- **Request a Product Appeal**
- **What are Standard Contractual Clauses?**

© 2022 Meta

Help Center

# EXHIBIT B

# Community Standards

The Community Standards outline what is and isn't allowed on Facebook, Instagram, Messenger and Threads.

## Introduction

Every day, people use Facebook, Instagram, Messenger and Threads to share their experiences, connect with friends and family, and build communities. Our services enable billions of people to freely express themselves across countries and cultures and in dozens of languages.

Meta recognizes how important it is for Facebook, Instagram, Messenger and Threads to be places where people feel empowered to communicate, and we take our role seriously in keeping abuse off the service. That’s why we developed standards for what is and isn’t allowed on these services.

These standards are based on feedback from people and the advice of experts in fields like technology, public safety and human rights. To ensure everyone’s voice is valued, we take great care to create standards that include different views and beliefs, especially from people and communities that might otherwise be overlooked or marginalized.

**Please note that the US English version of the Community Standards reflects the most up to date set of the policies and should be used as the primary document.**

## Our commitment to voice

The goal of our Community Standards is to create a place for expression and give people a voice. Meta wants people to be able to talk openly about the issues that matter to them, whether through written comments, photos, music, or other artistic mediums, even if some may disagree or find them objectionable. In some cases, we allow content—which would otherwise go against our standards—if it's newsworthy and in the public interest. We do this only after weighing the public interest value against the risk of harm, and we look to international human rights standards to make these judgments. In other cases, we may remove content that uses ambiguous or implicit language when additional context allows us to reasonably understand that the content goes against our standards.

Our commitment to expression is paramount, but we recognize the internet creates new and increased opportunities for abuse. For these reasons, when we limit expression, we do it in service of one or more of the following values:



**AUTHENTICITY**

We want to make sure the content people see is authentic. We believe that authenticity creates a better environment for sharing, and that's why we don't want people using our services to misrepresent who they are or what they're doing.




**SAFETY**

We're committed to making Facebook, Instagram, Messenger and Threads safe places. We remove content that could contribute to a risk of harm to the physical security of persons. Content that threatens people has the potential to intimidate, exclude or silence others and isn't allowed on our services.



**PRIVACY**

We're committed to protecting personal privacy and information. Privacy gives people the freedom to be themselves, choose how and when to share on our services and connect more easily.



**DIGNITY**

We believe that all people are equal in dignity and rights. We expect that people will respect the dignity of others and not harass or degrade others.

# Community Standards

Our Community Standards apply to everyone, all around the world, and to all types of content, including AI-generated content.

Each section of our Community Standards starts with a "Policy Rationale" that sets out the aims of the policy followed by specific policy lines that outline:

Content that's not allowed; and

Content that requires additional information or context to enforce on, content that is allowed with a warning screen or content that is allowed but can only be viewed by adults aged 18 and older.

Coordinating Harm and Promoting Crime

Dangerous Organizations and Individuals

Fraud, Scams, and Deceptive Practices

Restricted Goods and Services

Violence and Incitement

Adult Sexual Exploitation

Bullying and Harassment

Child Sexual Exploitation, Abuse, and Nudity

Human Exploitation

Suicide, Self-Injury, and Eating Disorders

Adult Nudity and Sexual Activity

Adult Sexual Solicitation and Sexually Explicit Language

Hateful Conduct

Privacy Violations

Violent and Graphic Content

Account Integrity

Authentic Identity Representation

Cybersecurity

Inauthentic Behavior

Memorialization

Misinformation

Spam

Third-Party Intellectual Property Infringement

Using Meta Intellectual Property and Licenses

Additional Protection of Minors

Locally Illegal Content, Products, or Services

User Requests

NEXT

## Other policies

Meta

# EXHIBIT C

Instagram

Search Help Center

**Data Policy**

*The Facebook company is now Meta. We've updated our Terms of Use, Data Policy, and Cookies Policy to reflect the new name on January 4, 2022. While our company name has changed, we are continuing to offer the same products, including the Facebook app from Meta. Our Data Policy and Terms of Service remain in effect, and this name change does not affect how we use or share data. Learn more about Meta and our vision for the metaverse.*

# Data Policy

This policy describes the information we process to support Facebook, Instagram, Messenger and other products and features offered by Meta Platforms, Inc. (Meta Products or Products). You can find additional tools and information in the Facebook Settings and Instagram Settings.

## I. What kinds of information do we collect?

To provide the Meta Products, we must process information about you. The types of information we collect depend on how you use our Products. You can learn how to access and delete information we collect by visiting the Facebook Settings and Instagram Settings.

### Things you and others do and provide.

- **Information and content you provide.** We collect the content, communications and other information you provide when you use our Products, including when you sign up for an account, create or share content, and message or communicate with others. This can include information in or about the content you provide (like metadata), such as the location of a photo or the date a file was created. It can also include what you see through features we provide, such as our camera, so we can do things like suggest masks and filters that you might like, or give you tips on using camera formats. Our systems automatically process content and communications you and others provide to analyze context and what's in them for the purposes described below. Learn more about how you can control who can see the things you share.
    - Data with special protections: You can choose to provide information in your Facebook profile fields or Life Events about your religious views, political

views, who you are "interested in," or your health. This and other information (such as racial or ethnic origin, philosophical beliefs or trade union membership) could be subject to special protections under the laws of your country.

- **Networks and connections.** We collect information about the people, accounts, hashtags and Facebook groups, and Pages you are connected to and how you interact with them across our Products, such as people you communicate with the most or groups you are part of. We also collect contact information if you choose to upload, sync or import it from a device (such as an address book or call log or SMS log history), which we use for things like helping you and others find people you may know and for the other purposes listed below.
- **Your usage.** We collect information about how you use our Products, such as the types of content you view or engage with; the features you use; the actions you take; the people or accounts you interact with; and the time, frequency and duration of your activities. For example, we log when you're using and have last used our Products, and what posts, videos and other content you view on our Products. We also collect information about how you use features like our camera.
- **Information about transactions made on our Products.** If you use our Products for purchases or other financial transactions (such as when you make a purchase in a game or make a donation), we collect information about the purchase or transaction. This includes payment information, such as your credit or debit card number and other card information; other account and authentication information; and billing, shipping and contact details.
- **Things others do and information they provide about you.** We also receive and analyze content, communications and information that other people provide when they use our Products. This can include information about you, such as when others share or comment on a photo of you, send a message to you, or upload, sync or import your contact information.

## Device Information

As described below, we collect information from and about the computers, phones, connected TVs and other web-connected devices you use that integrate with our Products, and we combine this information across different devices you use. For example, we use information collected about your use of our Products on your phone to better personalize the content (including ads) or features you see when you use our Products on another device, such as your laptop or tablet, or to measure whether you took an action in response to an ad we showed you on your phone on a different device.

Information we obtain from these devices includes:

- **Device attributes:** information such as the operating system, hardware and software versions, battery level, signal strength, available storage space, browser type, app and file names and types, and plugins.
- **Device operations:** information about operations and behaviors performed on the device, such as whether a window is foregrounded or backgrounded, or mouse movements (which can help distinguish humans from bots).
- **Identifiers:** unique identifiers, device IDs, and other identifiers, such as from games, apps or accounts you use, and Family Device IDs (or other identifiers unique to Meta Company Products associated with the same device or account).
- **Device signals:** Bluetooth signals, and information about nearby Wi-Fi access points, beacons, and cell towers.
- **Data from device settings:** information you allow us to receive through device settings you turn on, such as access to your GPS location, camera or photos.
- **Network and connections:** information such as the name of your mobile operator or ISP, language, time zone, mobile phone number, IP address, connection speed and, in some cases, information about other devices that are nearby or on your network, so we can do things like help you stream a video from your phone to your TV.
- **Cookie data:** data from cookies stored on your device, including cookie IDs and settings. Learn more about how we use cookies in the Facebook Cookies Policy and Instagram Cookies Policy.

### Information from partners.

Advertisers, app developers, and publishers can send us information through Meta Business Tools they use, including our social plug-ins (such as the Like button), Facebook Login, our APIs and SDKs, or the Meta pixel. These partners provide information about your activities off of our Products—including information about your device, websites you visit, purchases you make, the ads you see, and how you use their services—whether or not you have an account or are logged into our Products. For example, a game developer could use our API to tell us what games you play, or a business could tell us about a purchase you made in its store. We also receive information about your online and offline actions and purchases from third-party data providers who have the rights to provide us with your information.

Partners receive your data when you visit or use their services or through third parties they work with. We require each of these partners to have lawful rights to collect, use and share your data before providing any data to us. Learn more about the types of partners we receive data from.

To learn more about how we use cookies in connection with Meta Business Tools, review the Facebook Cookies Policy and Instagram Cookies Policy.

## II. How do we use this information?

We use the information we have (subject to choices you make) as described below and to provide and support the Meta Products and related services described in the Meta Terms and Instagram Terms. Here's how:

### Provide, personalize and improve our Products.

We use the information we have to deliver our Products, including to personalize features and content (including your ads, Facebook News Feed, Instagram Feed, and Instagram Stories) and make suggestions for you (such as groups or events you may be interested in or topics you may want to follow) on and off our Products. To create personalized Products that are unique and relevant to you, we use your connections, preferences, interests and activities based on the data we collect and learn from you and others (including any data with special protections you choose to provide); how you use and interact with our Products; and the people, places, or things you're connected to and interested in on and off our Products. Learn more about how we use information about you to personalize your Facebook and Instagram experience, including features, content and recommendations in Meta Products; you can also learn more about how we choose the ads that you see.

- **Information across Meta Products and devices:** We connect information about your activities on different Meta Products and devices to provide a more tailored and consistent experience on all Meta Products you use, wherever you use them. For example, we can suggest that you join a group on Facebook that includes people you follow on Instagram or communicate with using Messenger. We can also make your experience more seamless, for example, by automatically filling in your registration information (such as your phone number) from one Meta Product when you sign up for an account on a different Product.
- **Location-related information:** We use location-related information-such as your current location, where you live, the places you like to go, and the businesses and people you're near-to provide, personalize and improve our Products, including ads, for you and others. Location-related information can be based on things like precise device location (if you've allowed us to collect it), IP addresses, and information from your and others' use of Meta Products (such as check-ins or events you attend).
- **Product research and development:** We use the information we have to develop, test and improve our Products, including by conducting surveys and research, and testing and troubleshooting new products and features.
- **Ads and other sponsored content:** We use the information we have about you-including information about your interests, actions and connections-to select and personalize ads, offers and other sponsored content that we show you. Learn more about how we select and personalize ads, and your choices over the data we use to select ads and other sponsored content for you in the Facebook Settings and Instagram Settings.

**Provide measurement, analytics, and other business services.**
We use the information we have (including your activity off our Products, such as the websites you visit and ads you see) to help advertisers and other partners measure the effectiveness and distribution of their ads and services, and understand the types of people who use their services and how people interact with their websites, apps, and services. Learn how we share information with these partners.

**Promote safety, integrity and security.**
We use the information we have to verify accounts and activity, combat harmful conduct, detect and prevent spam and other bad experiences, maintain the integrity of our Products, and promote safety and security on and off of Meta Products. For example, we use data we have to investigate suspicious activity or violations of our terms or policies, or to detect when someone needs help. To learn more, visit the Facebook Security Help Center and Instagram Security Tips.

**Communicate with you.**
We use the information we have to send you marketing communications, communicate with you about our Products, and let you know about our policies and terms. We also use your information to respond to you when you contact us.

**Research and innovate for social good.**
We use the information we have (including from research partners we collaborate with) to conduct and support research and innovation on topics of general social welfare, technological advancement, public interest, health and well-being. For example, we analyze information we have about migration patterns during crises to aid relief efforts. Learn more about our research programs.

## III. How is this information shared?

Your information is shared with others in the following ways:

### Sharing on Meta Products

**People and accounts you share and communicate with**
When you share and communicate using our Products, you choose the audience for what you share. For example, when you post on Facebook, you select the audience for the post, such as a group, all of your friends, the public, or a customized list of people. Similarly, when you use Messenger or Instagram to communicate with people or businesses, those people and businesses can see the content you send. Your network can

also see actions you have taken on our Products, including engagement with ads and sponsored content. We also let other accounts see who has viewed their Facebook or Instagram Stories.

**Public information** can be seen by anyone, on or off our Products, including if they don't have an account. This includes your Instagram username; any information you share with a public audience; information in your public profile on Facebook; and content you share on a Facebook Page, public Instagram account or any other public forum, such as Facebook Marketplace. You, other people using Facebook and Instagram, and we can provide access to or send public information to anyone on or off our Products, including in other Meta Company Products, in search results, or through tools and APIs. Public information can also be seen, accessed, reshared or downloaded through third-party services such as search engines, APIs, and offline media such as TV, and by apps, websites and other services that integrate with our Products.

Learn more about what information is public and how to control your visibility on Facebook and Instagram.

**Content others share or reshare about you**

You should consider who you choose to share with, because people who can see your activity on our Products can choose to share it with others on and off our Products, including people and businesses outside the audience you shared with. For example, when you share a post or send a message to specific friends or accounts, they can download, screenshot, or reshare that content to others across or off our Products, in person or in virtual reality experiences such as Horizon Worlds. Also, when you comment on someone else's post or react to their content, your comment or reaction is visible to anyone who can see the other person's content, and that person can change the audience later.

People can also use our Products to create and share content about you with the audience they choose. For example, people can share a photo of you in a Story, mention or tag you at a location in a post, or share information about you in their posts or messages. If you are uncomfortable with what others have shared about you on our Products, you can learn how to report the content.

**Information about your active status or presence on our Products.**

People in your networks can see signals telling them whether you are active on our Products, including whether you are currently active on Instagram, Messenger or Facebook, or when you last used our Products.

**Apps, websites, and third-party integrations on or using our Products.**

When you choose to use third-party apps, websites, or other services that use, or are integrated with, our Products, they can receive information about what you post or share. For example, when you play a game with your Facebook friends or use a Facebook Comment or Share button on a website, the game developer or website can receive information about your activities in the game or receive a comment or link that you share

from the website on Facebook. Also, when you download or use such third-party services, they can access your public profile on Facebook, and any information that you share with them. Apps and websites you use may receive your list of Facebook friends if you choose to share it with them. But apps and websites you use will not be able to receive any other information about your Facebook friends from you, or information about any of your Instagram followers (although your friends and followers may, of course, choose to share this information themselves). Information collected by these third-party services is subject to their own terms and policies, not this one.

Devices and operating systems providing native versions of Facebook and Instagram (i.e. where we have not developed our own first-party apps) will have access to all information you choose to share with them, including information your friends share with you, so they can provide our core functionality to you.

*Note: We are in the process of restricting developers' data access even further to help prevent abuse. For example, we will remove developers' access to your Facebook and Instagram data if you haven't used their app in 3 months, and we are changing Login, so that in the next version, we will reduce the data that an app can request without app review to include only name, Instagram username and bio, profile photo and email address. Requesting any other data will require our approval.*

**New owner.**

If the ownership or control of all or part of our Products or their assets changes, we may transfer your information to the new owner.

## Sharing with Third-Party Partners

We work with third-party partners who help us provide and improve our Products or who use Meta Business Tools to grow their businesses, which makes it possible to operate our companies and provide free services to people around the world. We don't sell any of your information to anyone, and we never will. We also impose strict restrictions on how our partners can use and disclose the data we provide. Here are the types of third parties we share information with:

**Partners who use our analytics services.**

We provide aggregated statistics and insights that help people and businesses understand how people are engaging with their posts, listings, Facebook Pages, videos and other content on and off the Meta Products. For example, Facebook Page admins and Instagram business profiles receive information about the number of people or accounts who viewed, reacted to, or commented on their posts, as well as aggregate demographic and other information that helps them understand interactions with their account or Facebook Page.

**Advertisers.**

We provide advertisers with reports about the kinds of people seeing their ads and how their ads are performing, but we don't share information that personally identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us permission. For example, we provide general demographic and interest information to advertisers (for example, that an ad was seen by a woman between the ages of 25 and 34 who lives in Madrid and likes software engineering) to help them better understand their audience. We also confirm which ads led you to make a purchase or take an action with an advertiser.

**Measurement partners.**

We share information about you with companies that aggregate it to provide analytics and measurement reports to our partners.

**Partners offering goods and services in our Products.**

When you subscribe to receive premium content, or buy something from a seller in our Products, the content creator or seller can receive your public information and other information you share with them, as well as the information needed to complete the transaction, including shipping and contact details.

**Vendors and service providers.**

We provide information and content to vendors and service providers who support our business, such as by providing technical infrastructure services, analyzing how our Products are used, providing customer service, facilitating payments or conducting surveys.

**Researchers and academics.**

We also provide information and content to research partners and academics to conduct research that advances scholarship and innovation that support our business or mission, and enhances discovery and innovation on topics of general social welfare, technological advancement, public interest, health and well-being.

**Law enforcement or legal requests.**

We share information with law enforcement or in response to legal requests in the circumstances outlined below.

Learn more about how you can control the information about you that you or others share with third-party partners in the Facebook Settings and Instagram Settings.

## IV. How do the Meta Companies work together?

Facebook and Instagram share infrastructure, systems and technology with other Meta Companies (which include WhatsApp and Oculus) to provide an innovative, relevant, consistent and safe experience across all Meta Company Products you use. We also process information about you across the Meta Companies for these purposes, as permitted by applicable law and in accordance with their terms and policies. For example, we process information from WhatsApp about accounts

sending spam on its service so we can take appropriate action against those accounts on Facebook, Instagram or Messenger. We also work to understand how people use and interact with Meta Company Products, such as understanding the number of unique users on different Meta Company Products.

## V. How can I manage or delete information about me?

We provide you with the ability to access, rectify, port and erase your data. Learn more in your Facebook Settings and Instagram Settings.

We store data until it is no longer necessary to provide our services and Meta Products, or until your account is deleted - whichever comes first. This is a case-by-case determination that depends on things like the nature of the data, why it is collected and processed, and relevant legal or operational retention needs. For example, when you search for something on Facebook, you can access and delete that query from within your search history at any time, but the log of that search is deleted after 6 months. If you submit a copy of your government-issued ID for account verification purposes, we delete that copy 30 days after review, unless otherwise stated. Learn more about deletion of content you have shared and cookie data obtained through social plugins.

When you delete your account, we delete things you have posted, such as your photos and status updates, and you won't be able to recover that information later. Information that others have shared about you isn't part of your account and won't be deleted. If you don't want to delete your account but want to temporarily stop using the Products, you can deactivate your account instead. To delete your account at any time, please visit the Facebook Settings and Instagram Settings.

## VI. How do we respond to legal requests or prevent harm?

We access, preserve and share your information with regulators, law enforcement or others:

- In response to a legal request (like a search warrant, court order or subpoena) if we have a good faith belief that the law requires us to do so. This may include responding to legal requests from jurisdictions outside of the United States when we have a good-faith belief that the response is required by law in that jurisdiction, affects users in that jurisdiction, and is consistent with internationally recognized standards.
- When we have a good-faith belief it is necessary to: detect, prevent and address fraud, unauthorized use of the Products, violations of our terms or policies, or other harmful or illegal activity; to protect ourselves (including our rights, property or Products), you or others, including as part of investigations or regulatory inquiries; or to prevent death or imminent bodily harm. For example, if relevant, we provide information to and receive information from third-party partners about the reliability of your account to prevent fraud, abuse and other harmful activity on and off our Products.

Information we receive about you (including financial transaction data related to purchases made on our Products) can be accessed and preserved for an extended period when it is the subject of a legal request or obligation, governmental investigation, or investigations of possible violations of our terms or policies, or otherwise to prevent harm. We also retain information from accounts disabled for terms violations for at least a year to prevent repeat abuse or other term violations.

## VII. How do we operate and transfer data as part of our global services?

We share information globally, both internally within the Meta Companies, and externally with our partners and with those you connect and share with around the world in accordance with this policy. Your information may, for example, be transferred or transmitted to, or stored and processed in the United States or other countries outside of where you live for the purposes as described in this policy. These data transfers are necessary to provide the services set forth in the Meta Terms and Instagram Terms and to globally operate and provide our Products to you. We utilize standard contract clauses, rely on the European Commission's adequacy decisions about certain countries, as applicable, and obtain your consent for these data transfers to the United States and other countries.

## VIII. How will we notify you of changes to this policy?

We'll notify you before we make changes to this policy and give you the opportunity to review the revised policy before you choose to continue using our Products.

## IX. How to contact us with questions

You can learn more about how privacy works on Facebook and on Instagram. If you have questions about this policy, you can contact us as described below.
You can contact us online or by mail at:

Meta Platforms, Inc.
ATTN: Privacy Operations
1601 Willow Road
Menlo Park, CA 94025

## Privacy Notice for California Residents

If you are a California resident, you can learn more about your consumer privacy rights by reviewing the California Privacy Notice.

Date of Last Revision: January 4, 2022

Was this information helpful?

Yes No

Related Articles

How does Meta work with data providers?

Issues purchasing a Free Basics data promotion on your mobile phone

Download a copy of your information on Facebook

Facebook's policies on disabling or deleting hacked, unused or unconfirmed accounts.

How does the Facebook Feed Ranking work?



**Meta © 2022**