KIRKLAND & ELLIS LLP
LAURA E. VARTAIN HORN, SBN 258485
laura.vartain@kirkland.com
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: 415.439.1400

ALLISON W. BUCHNER, SBN 253102
allison.buchner@kirkland.com
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: 310.552.4200

K. WINN ALLEN, P.C. (*pro hac vice*)
YAFFA A. MEERAN (*pro hac vice*)
winn.allen@kirkland.com
yaffa.meeran@kirkland.com
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: 202.389.5000

*Attorneys for Defendant*
*Meta Platforms, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EMORY ANDREW TATE III, an Individual; TRISTAN TATE, an Individual, <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC.; and DOES 1 through 10, inclusive, <br><br> Defendant(s). | Case No. 3:26-CV-00901-JSC <br><br> Judge Jacqueline Scott Corley <br><br> **META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE THE COMPLAINT** <br><br> Date: Thursday, April 23, 2026 <br><br> Time: 10:00 AM <br><br> Courtroom: 8, 19th Floor |

META'S MOTION TO DISMISS AND STRIKE

CASE NO. 3:26-cv-00901-JSC

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on Thursday, April 23, 2026 at 10:00 AM, the undersigned will appear before the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California in Courtroom 8, and shall then and there present Meta Platforms, Inc.'s ("Meta") Motion to Dismiss and Strike the Complaint. The Motion is based on this Notice of Motion, Motion, the attached Memorandum of Points and Authorities, the Supporting Declaration of K. Winn Allen and attached Exhibits, the pleadings and other papers on file in this action, any oral argument, and any other evidence the Court may consider in hearing this Motion.

**RELIEF REQUESTED**

Meta requests that the Court dismiss the complaint and strike plaintiffs' state law claims, with prejudice.

**STATEMENT OF THE ISSUES TO BE DECIDED**

On August 13, 2025, plaintiffs Emory Andrew Tate III and Tristan Tate filed this lawsuit alleging that Meta unlawfully removed plaintiffs' accounts from its Instagram online service. Plaintiffs bring claims for breach of contract, breach of California Business & Profession Code Section 17200, tortious interference, unjust enrichment, intentional infliction of emotional distress, California Civil Code Section 51(b), breach of implied covenant of good faith and fair dealing, misrepresentation, promissory estoppel, fraud, violation of 42 U.S.C. Section 1983, and false light. Meta moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and to strike under California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute, California Code of Civil Procedure Section 425.16. This Motion raises the following issues:

1. Whether plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because plaintiffs fail to state a plausible claim for relief.

2. Whether California's anti-SLAPP statute, California Code of Civil Procedure Section 425.16, bars plaintiffs' state law claims because plaintiffs seek to curb Meta's exercise of its constitutional rights in connection with a public issue.

3. Whether the Court should dismiss plaintiffs' complaint with prejudice because amendment would not cure its deficiencies.

META'S MOTION TO DISMISS AND STRIKE         ii         CASE No. 3:26-cv-00901-JSC

**TABLE OF CONTENTS**

INTRODUCTION..............................................................................................................................1

BACKGROUND ............................................................................................................................2

LEGAL STANDARD ....................................................................................................................4

ARGUMENT..................................................................................................................................5

I.    The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6). .........................5

    A.    Section 230 Bars Plaintiffs' Claims..................................................................5

    B.    The First Amendment Bars Plaintiffs' Claims..................................................8

    C.    The Instagram Terms Of Use Expressly Bar Plaintiffs' Claims.......................9

    D.    Plaintiffs' Claims Each Fail On Their Own Merits. ....................................... 10

II.   The Court Should Strike Plaintiffs' State Law Claims Under California's Anti-SLAPP Law. .......................................................................................................... 19

III.  The Court Should Enter Judgment For Meta With Prejudice................................. 20

CONCLUSION ........................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Arminak v. Arminak & Assocs., LLC,*
2016 WL 10788359 (C.D. Cal. Dec. 7, 2016) ..........................................................................16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................................................................4

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009) ......................................................................................................6

*Benefield v. Bryco Funding, Inc.,*
2014 WL 2604363 (N.D. Cal. June 10, 2014)............................................................................16

*Berry v. Frazier,*
90 Cal. App. 5th 1258 (2023) ...............................................................................................16, 17

*Biden v. Texas,*
597 U.S. 785 (2022)....................................................................................................................13

*Blash v. Wells Fargo Bank,*
2015 WL 12791376 (C.D. Cal. Feb. 26, 2015)..........................................................................14

*Bogard v. TikTok Inc.,*
2025 WL 604972 (N.D. Cal. Feb. 24, 2025) .......................................................................17, 18

*Brahmana v. Lembo,*
2010 WL 965296 (N.D. Cal. Mar. 17, 2010)..............................................................................16

*Brittain v. Twitter, Inc.,*
2019 WL 2423375 (N.D. Cal. June 10, 2019)............................................................................20

*Brooke v. Rihh LP,*
2020 WL 788889 (N.D. Cal. Feb. 18, 2020) ..............................................................................17

*Caraccioli v. Facebook, Inc.,*
167 F. Supp. 3d 1056 (N.D. Cal. 2016) .....................................................................................12

*Caraccioli v. Facebook, Inc.,*
700 F. App'x 588 (9th Cir. 2017) .................................................................................................9

*Carafano v. Metrosplash.com, Inc.,*
339 F.3d 1119 (9th Cir. 2003) ......................................................................................................5

*Castronuova v. Meta Platforms, Inc.,*
2025 WL 1914860 (N.D. Cal. June 10, 2025)..............................................................................8

*Children's Health Def. v. Meta Platforms, Inc.*,
  112 F.4th 742 (9th Cir. 2024) ....................................................................................8, 11, 13

*Comet Theatre Enters., Inc. v. Cartwright*,
  195 F.2d 80 (9th Cir. 1952) ....................................................................................................18

*Cutler v. Rancher Energy Corp.*,
  2014 WL 1153054 (C.D. Cal. Mar. 11, 2014)........................................................................17

*Daniels v. Alphabet Inc.*,
  2021 WL 122216 (N.D. Cal. Mar. 31, 2021)........................................................................7, 8

*Doe (K.B.) v. Backpage.com, LLC*,
  768 F. Supp. 3d 1057 (N.D. Cal. 2025) ..................................................................................6

*Doe v. Grindr Inc.*,
  128 F.4th 1148 (9th Cir.) .........................................................................................................5

*Dolin v. Facebook, Inc.*,
  2018 WL 2047766 (N.D. Cal. May 2, 2018)...........................................................................15

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ...............................................................................................18

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ..................................................................................................8

*e360Insight, LLC v. Comcast Corp.*,
  546 F. Supp. 2d 605 (N.D. Ill. 2008) .......................................................................................7

*Ebeid v. Facebook, Inc.*,
  2019 WL 2059662 (N.D. Cal. May 9, 2019)............................................................................6

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ...............................................................................................4, 12

*Edwards v. Arthur Andersen LLP*,
  44 Cal. 4th 937 (2008) ............................................................................................................15

*Eliott v. Lions Gate Ent. Corp.*,
  639 F. Supp. 3d 1012 (C.D. Cal. 2022) ..................................................................................19

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ...............................................................................................5, 8

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...................................................................................6

*Flores v. Emerich & Fike*,
  2006 WL 2536615 (E.D. Cal. Aug. 31, 2006).........................................................................20

*Fyk v. Facebook, Inc.*,
    808 F. App'x 597 (9th Cir. 2020) ........................................................................................6

*Fyk v. United States*,
    2023 WL 3933719 (D.D.C. June 9, 2023) ...........................................................................6

*George v. Pac.-CSC Work Furlough*,
    91 F.3d 1227 (9th Cir. 1996) .............................................................................................11

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ........................................................................................8, 19

*Harkonen v. Fleming*,
    880 F. Supp. 2d 1071 (N.D. Cal. 2012) ..............................................................................4

*Heineke v. Santa Clara Univ.*,
    965 F.3d 1009 (9th Cir. 2020) ...........................................................................................10

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ..........................................................................................4, 19

*Holomaxx Techs. v. Microsoft Corp.*,
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) ..............................................................................7

*Ibrahim v. Dep't of Homeland Sec.*,
    538 F.3d 1250 (9th Cir. 2008) ...........................................................................................12

*In re Ford Tailgate Litig.*,
    2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ...................................................................18

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
    880 F. Supp. 2d 1029 (N.D. Cal. 2012) ............................................................................14

*Johnson v. Meta Platforms, Inc.*,
    2023 WL 5021784 (N.D. Cal. Aug. 4, 2023) ...............................................................10, 15

*Karam v. Meta Platforms, Inc.*,
    2025 WL 3079048 (N.D. Cal. Nov. 4, 2025) .....................................................................10

*Kennedy v. Meta Platforms, Inc.*,
    2024 WL 4031486 (N.D. Cal. Sept. 3, 2024) ..................................................................8, 9

*Kennedy v. Meta Platforms Inc.*,
    2024 WL 4565091 (N.D. Cal. Oct. 23, 2024) ....................................................................10

*King v. Facebook, Inc.*,
    2023 WL 5318464 (9th Cir. Aug. 18, 2023) ......................................................................17

*King v. Facebook, Inc.*,
    572 F. Supp. 3d 776 (N.D. Cal. 2021) .........................................................................16, 20

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ...............................................................................6

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ...........................................................................2, 9, 12

*Lee v. Luxottica Retail N. Am., Inc.*,
   65 Cal. App. 5th 793 (2021) ...................................................................................18

*Lowenberg v. Ill. Mut. Life Ins. Co.*,
   2022 WL 3925298 (N.D. Cal. Aug. 30, 2022) .........................................................13

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ...................................................................................4

*Manhattan Cmty. Access Corp. v. Halleck*,
   587 U.S. 802 (2019)...................................................................................................10

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974)....................................................................................................8

*Moody v. NetChoice*,
   603 U.S. 707 (2024)....................................................................................................8

*Moore v. Greyhound Bus Lines, Inc.*,
   793 F. App'x 595 (9th Cir. 2020) .............................................................................17

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) ...................................................................18

*Nat'l Rifle Ass'n of Am. v. Vullo*,
   602 U.S. 175 (2024)....................................................................................................11

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) .........................................................................................17

*Nguyen v. Nissan N. Am., Inc.*,
   2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) .........................................................18

*Nunes v. Meredith*,
   2022 WL 2214205 (E.D. Cal. June 21, 2022) ...........................................................19

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) ................................................................9, 11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir.) ...............................................................................................4

*Prager Univ. v. Google LLC*,
   85 Cal. App. 5th 1022 (2022) ...................................................................................18

*Putian Authentic Enter. Mgmt. Co., Ltd v. Meta Platforms, Inc.*,
    2022 WL 1171034 (N.D. Cal. Apr. 19, 2022) ................................................................14

*Riggs v. MySpace, Inc.*,
    444 F. App'x 986 (9th Cir. 2011) .................................................................................6

*Rogalinski v. Meta Platforms, Inc.*,
    2023 WL 7876519 (9th Cir. Nov. 16, 2023)................................................................11

*Rosal v. First Fed. Bank of Cal.*,
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) ......................................................................15

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*,
    965 F.Supp.2d 1141 (E.D. Cal. 2013).........................................................................17

*Shang v. Twitch Interactive, Inc.*,
    2025 WL 56415 (N.D. Cal. Jan. 9, 2025) ...................................................................10

*Sikhs for Just., Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) .........................................................................6

*Silva v. Hearst Corp.*,
    1997 WL 33798080 (C.D. Cal. Aug. 22, 1997)...........................................................16

*Skidmore v. Regents of Univ. of Cal.*,
    2021 WL 843195 (N.D. Cal. Mar. 5, 2021).................................................................16

*Sky Sleep Lab, Inc. v. Cigna Health & Life Ins. Co.*,
    2025 WL 736496 (C.D. Cal. Jan. 23, 2025) ...............................................................18

*Smith v. City & Cnty. of San Francisco*,
    225 Cal. App. 3d 38 (Cal. 1990)..................................................................................14

*Smith v. Santa Rosa Democrat*,
    2011 WL 5006463 (N.D. Cal. Oct. 20, 2011)..............................................................20

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ......................................................................................18

*Stackla, Inc. v. Facebook, Inc.*,
    2019 WL 4738288 (N.D. Cal. Sept. 27, 2019) ...........................................................20

*Stossel v. Meta Platforms, Inc.*,
    634 F. Supp. 3d 743 (N.D. Cal. 2022) ........................................................................19

*Straw v. Facebook*,
    2025 WL 2597018 (N.D. Cal. Sept. 8, 2025) ........................................................15, 16

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) .......................................................................................11

*US Ecology, Inc. v. State,*
　129 Cal. App. 4th 887 (Cal. 2005) ...................................................................................14

*Wescott v. Beresford Corp.,*
　2022 WL 1062061 (N.D. Cal. Apr. 8, 2022) .................................................................11

*Young v. ByteDance Inc.,*
　2023 WL 3484215 (N.D. Cal. May 15, 2023) ...............................................................18

*Young v. Meta Platforms, Inc.,*
　2025 WL 2930979 (N.D. Cal. Oct. 15, 2025).................................................................9

*Zango, Inc. v. Kaspersky Lab, Inc.,*
　2007 WL 5189857 (W.D. Wash. Aug. 28, 2007) ...........................................................7

*Zhang v. Twitter Inc.,*
　2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) ..........................................................6, 13

**Statutes**

47 U.S.C. § 230(c)(1).................................................................................................................5, 6

47 U.S.C. § 230(c)(2)(A) ...............................................................................................................7

47 U.S.C. § 230(f)(2) .....................................................................................................................5

47 U.S.C. § 230(f)(3) .....................................................................................................................6

Cal. Civ. Code § 51(b) .................................................................................................................17

Cal. Civ. P. Code § 425.16(b)(1) .............................................................................................4, 19

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................ *passim*

Fed. R. Civ. P. 9(b) ......................................................................................................................17

**INTRODUCTION**

This case involves yet another challenge to Meta's well-established right to exercise editorial control over who may post content on Instagram. And as with the dozens of materially identical lawsuits that have come before it, this case must be dismissed.

Plaintiffs Emory Andrew Tate III and Tristan Tate built a following based on misogynistic and hate-filled content that they post online. The Romanian government then raided their homes and placed them under house arrest in connection with criminal investigations of human trafficking. Based on their online content and offline conduct, Meta determined that plaintiffs violated Meta's Dangerous Organizations and Individuals ("DOI") policy—a policy plaintiffs concede governed their access to Instagram—and removed plaintiffs from Instagram. Despite plaintiffs' dispositive concession that the DOI policy applied, plaintiffs now claim that Meta's decision to remove them from Instagram violates various state and federal laws.

Court after court—including the Ninth Circuit and those in this District—has rejected the recycled arguments plaintiffs make here. That is because Meta cannot be held liable for enforcing its policies and removing plaintiffs' accounts. Meta has statutory, constitutional, and contractual rights to decide whether, when, and how to remove accounts from its services. Section 230 of the Communications Decency Act forecloses plaintiffs' claims because those claims treat Meta as a publisher of content posted by other persons (*i.e.*, plaintiffs). The First Amendment and California's anti-SLAPP statute each bar plaintiffs' claims because plaintiffs seek to hold Meta liable for its constitutionally protected exercise of editorial discretion in deciding to remove plaintiffs' accounts from Instagram. And the Instagram Terms of Use that plaintiffs seek to enforce through this lawsuit authorized Meta to remove plaintiffs' accounts.

Even if plaintiffs' claims were not independently barred by each of these grounds, plaintiffs have not plausibly alleged Meta violated the law. Here too, plaintiffs make arguments that the Ninth Circuit and courts in this District have soundly rejected. Plaintiffs allege that Meta violated their First Amendment rights, but Meta is not a state actor and thus cannot violate the Constitution. And plaintiffs have failed to adequately plead any of their state law claims, including because the contract at issue (the Instagram Terms of Use) does not create the rights plaintiffs allege. Instead, the Terms of Use explicitly

META'S MOTION TO DISMISS AND STRIKE

CASE NO. 3:26-cv-00901-JSC

authorize Meta to determine when its policies have been violated and remove offending content and users' accounts accordingly.

No amendment to the complaint could remedy these defects. Accordingly, Meta respectfully requests that the Court dismiss the complaint and strike plaintiffs' state law claims, with prejudice.

**BACKGROUND**

Meta owns and operates a variety of online services used around the world. Among those services is Instagram, which allows users to create content, as well as view, share, and interact with content generated by other users. Plaintiffs previously operated Instagram accounts through which they disseminated self-described "controversial" content. Compl. ¶¶ 3, 34, 54. But what plaintiffs call merely controversial, Meta (along with most of the world that is familiar with plaintiffs) considers "promoting 'dangerous individuals or organizations'" and "inciting misogyny." *See id.* ¶ 32. Plaintiffs earned that reputation not just from their online personas but through their offline conduct. Plaintiffs have, for example, been "arrested in Romania and placed under house arrest in connection with criminal investigations" into "human trafficking [and] sexual exploitation." *Id.* ¶ 36.

When plaintiffs created their Instagram accounts, they agreed to abide by the Instagram Terms of Use and Meta's Community Standards. *See id.* ¶¶ 44, 49, 69. Per its Community Standards, Meta does not allow individuals on Instagram "that spread[] and encourage[] hate against others based on their protected characteristics," repeatedly engage in "hate speech," or otherwise "[e]ngage[] in repeated hateful conduct or rhetoric[.]" *See* Allen Decl., Ex. 1 at 3–4 (DOI Policy).[1] Meta looks to "behavior both online and offline" to assess whether an individual should be removed from Instagram under this policy. *Id.* Plaintiffs concede that their use of Instagram was subject to these Community Standards, Compl. ¶ 49, including the DOI policy linked within, *see id.* Ex. B (hyperlinking to the DOI policy terms).[2] Notably,

---

[1] Plaintiffs attach Meta's Community Standards as Exhibit B to their complaint. The Community Standards include (and hyperlink to) the DOI policy. The DOI policy is thus incorporated into plaintiffs' complaint, and the Court can consider that policy in adjudicating Meta's facial attack on plaintiffs' complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[2] Plaintiffs attach to their complaint what they contend are the Terms of Use, Community Standards, and Privacy Policy that governed their access to Instagram. *See* Compl. ¶¶ 44, 49; *see also id.* Exs. A–C. Plaintiffs are mistaken that these are the relevant terms. Meta Platforms Ireland Limited (a distinct entity from Meta Platforms, Inc.) is the sole service provider that provides Instagram to users across the European Region and is the party to be sued for disputes arising out of plaintiffs' use of Instagram. Meta

the Instagram Terms of Use that plaintiffs seek to enforce expressly limit liability for disputes like this one. Specifically, the Terms of Use provide that Meta "won't be responsible ('liable') for any lost profits, revenues, … or consequential, special, indirect, exemplary, punitive or incidental damages," including from the removal of "content, information, or account[s]." *Id.* Ex. A.

Meta has publicly explained that it removed plaintiffs' accounts under the DOI policy. *Id.* ¶ 32; *see also, e.g.*, Allen Decl., Ex. 2 at 1 (NPR article reporting that "Meta, the parent company of Facebook and Instagram, confirmed to NPR that Tate had been banned from its platforms for violating its policies regarding dangerous individuals and organizations and hate speech"). And the complaint does not dispute that plaintiffs are widely viewed as dangerous disseminators of hate speech; to the contrary, plaintiffs admit they are "controversial" "commenta[tors] on masculinity … and social issues." Compl. ¶¶ 3, 20. Yet despite plaintiffs' concession that the DOI policy applied to their accounts—and thus allowed Meta to remove them—plaintiffs assert that Meta removed them from Instagram "unlawful[ly]" and in violation of that same policy. *Id.* ¶¶ 1, 3. Plaintiffs suggest Meta's removal of their accounts was part of a "campaign to suppress, silence, and destroy the reputations and livelihoods of" plaintiffs that was coordinated with "government officials, media operatives, and ideological pressure groups[.]" *Id.* ¶¶ 3– 4. Yet plaintiffs do not identify a single government official, media operative, or ideological pressure group that Meta supposedly coordinated with to do so, nor do they allege any plausible facts establishing such coordination.

Searching for some way to impose liability on Meta's contractually authorized (and legally protected) decision to remove plaintiffs from Instagram, plaintiffs filed this suit and allege twelve causes of action ranging from a First Amendment violation to intentional infliction of emotional distress under California law. *Id.* ¶¶ 68–143. Most of plaintiffs' claims are based on their allegations that Meta's removal of their accounts has caused them financial injuries because they can no longer use Instagram to

Platforms Ireland Limited has its own distinct Terms of Use, which provide for exclusive venue in Irish courts. Plaintiffs are well aware of this—a September 2022 lawsuit brought by plaintiff Andrew Tate against Meta Platforms Ireland Limited in Germany was dismissed because, under the applicable Terms of Use, he was required to bring such claims in an Irish court. Because this motion to dismiss and strike takes plaintiffs' complaint on its face, however, Meta's arguments here assume without conceding that the terms and policies attached to (and incorporated by reference in) plaintiffs' complaint control. Meta reserves all rights, including the right to argue that plaintiffs have sued the wrong entity in the wrong forum.

spread their content. *See, e.g.*, *id.* ¶¶ 24, 27, 31, 63. Plaintiffs also allege that losing their Instagram accounts has caused them "psychological and physical harm, including insomnia, and weight loss." *Id.* ¶ 101.

None of plaintiffs' allegations state a claim upon which relief can be granted. Thus, Meta now moves to dismiss the entire complaint under Federal Rule of Civil Procedure 12(b)(6) and strike plaintiffs' state law claims under California's anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16(b)(1).

LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When considering plausibility, courts must also consider an obvious alternative explanation for defendant's behavior." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

California law separately provides for a "'special motion to strike' any cause of action against a person arising from" that person's exercise of a constitutional right to speak freely "in connection with a public issue." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). Those "anti-SLAPP protections apply to state law claims brought in federal court." *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078 (N.D. Cal. 2012). If the "plaintiff presents an insufficient legal basis for the claims," then "[t]he district court must grant the defendant's motion." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). The sufficiency of a plaintiff's claims is assessed by the same standard governing a motion to dismiss under Rule 12(b)(6). *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).

---

[3] All citations and quotations have been cleaned up and emphasis added, unless otherwise specified.

META'S MOTION TO DISMISS AND STRIKE              4              CASE NO. 3:26-cv-00901-JSC

**ARGUMENT**

Plaintiffs' claims each boil down to an attempt to hold Meta liable for its decision to remove their accounts from Instagram because plaintiffs engage in behaviors that violate Meta's policies. But those claims (and plaintiffs' theory) fail multiple times over, for reasons the Ninth Circuit and courts in this District have repeatedly explained. Meta's decision to remove plaintiffs' accounts is immunized by Section 230. Similarly, the First Amendment prevents lawsuits arising from Meta's exercises of its editorial discretion to remove users or content from its services. The Instagram Terms of Use that plaintiffs seek to enforce here also explicitly foreclose their claims, and each claim suffers from fatal individual defects. In addition to a Rule 12(b)(6) dismissal, the Court can strike plaintiffs' state law claims under California's anti-SLAPP law, as plaintiffs seek to hold Meta liable for constitutionally protected speech and fail to provide a sufficient legal basis for their claims. These fundamental flaws with plaintiffs' case are incurable, so the Court should dispose of this case with prejudice.

**I.     THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE 12(b)(6).**

**A.     Section 230 Bars Plaintiffs' Claims.**

Plaintiffs' claims are barred by Section 230 of the Communications Decency Act. *See* 47 U.S.C. § 230. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc). Congress enacted Section 230 "for two basic policy reasons: to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). The statute provides two independent bases for dismissing plaintiffs' complaint: Section 230(c)(1) and 230(c)(2).

***Section 230(c)(1).*** Section 230(c)(1) shields from liability (1) "a provider or user of an interactive computer service"; (2) "whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker"; (3) "of information provided by another information content provider." *Doe v. Grindr Inc.*, 128 F.4th 1148, 1151 (9th Cir.), *cert. denied*, 146 S. Ct. 319 (2025); *see also* 47 U.S.C. § 230(c)(1). An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). "[A]

META'S MOTION TO DISMISS AND STRIKE                    5                    CASE NO. 3:26-cv-00901-JSC

publisher reviews material submitted" by third parties and "decid[es] whether to publish, withdraw, postpone[,] or alter content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009). And "information … provided by another information content provider" encompasses "information provided through the Internet or any other interactive computer service" by "any person or entity." *Id.* at 1100, 1101 n.6; *see also* 47 U.S.C. § 230(f)(3). Put together, "the undisputed core of Section 230 immunity protects a website's moderation decisions, in its role as a 'publisher,' about which third-party content to remove and which to permit." *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1063 (N.D. Cal. 2025); *see also Fyk v. United States*, 2023 WL 3933719, at *4 (D.D.C. June 9, 2023) (stating that "decision[s] to publish, or not publish" are "immun[e] from civil liability").

Section 230(c)(1) plainly covers plaintiffs' claims. First, Meta, as the operator of Instagram, is unquestionably a provider of an interactive computer service because Instagram "provides or enables computer access by multiple users to a computer service." *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020); *see also Sikhs for Just., Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014). Second, plaintiffs' "claims relate to the suspension of [their] account[s]," so "whether they are styled as breach of contract, tort, or fraud claims," they all "seek to treat [Meta] as a publisher." *Zhang v. Twitter Inc.*, 2023 WL 5493823, at *4 (N.D. Cal. Aug. 23, 2023) (Corley, J.), *aff'd*, 2025 WL 66050 (9th Cir. Jan. 10, 2025). Thus, Meta's "decision to remove plaintiff[s' accounts] undoubtedly falls under 'publisher' conduct." *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019); *see also Fyk v. Facebook, Inc.*, 808 F. App'x 597, 597 n.2 (9th Cir. 2020) ("[I]t is clear that [plaintiff] seeks to hold Facebook liable as a publisher for its decisions to de-publish and re-publish the pages."). And third, plaintiffs seek to hold Meta liable as the publisher of "information provided by another information content provider" because the "information content" at issue is indisputably that of plaintiffs, not Meta. *See Fyk,* 808 F. App'x at 597*; see also* Compl. ¶¶ 12, 15, 26, 28–30, 47, 66. Given this straightforward reasoning, courts routinely hold that Section 230(c)(1) bars claims challenging the removal of content or accounts from online services. *See, e.g.*, *Sikhs for Just., Inc.*, 144 F. Supp. 3d at 1092–96; *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011); *Ebeid*, 2019 WL 2059662, at *3–5; *Zhang*, 2023 WL 5493823, at *4.

***Section 230(c)(2).*** Meta's removal of plaintiffs' accounts from Instagram is also a paradigmatic example of activity immunized by Section 230(c)(2). The statute protects from civil liability "any action voluntarily taken in good faith to restrict access to or availability of material that the provider … considers to be … objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)(A). Plaintiffs do not plausibly allege that Meta's editorial decisions were made in bad faith. Plaintiffs may disagree with those decisions or consider their content appropriate for Instagram, but Section 230(c)(2) "does not require that the material actually be objectionable; rather, it affords protection for blocking material 'that the provider or user considers to be' objectionable." *Zango, Inc. v. Kaspersky Lab, Inc.*, 2007 WL 5189857, at *4 (W.D. Wash. Aug. 28, 2007), *aff'd*, 568 F.3d 1169 (9th Cir. 2009). Section 230(c)(2) thus turns on the "subjective element" of the service provider's own determination that the removed account or content is "objectionable." *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 607–08 (N.D. Ill. 2008). And courts have concluded that "virtually ***total deference*** to provider's subjective determination is appropriate," including at the pleading stage. *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1104 (N.D. Cal. 2011) (relying on *e360Insight* and dismissing under Section 230(c)(2)).

"[C]onclusory assertions" that Meta maliciously removed plaintiffs' accounts do not move the needle. *See Daniels v. Alphabet Inc.*, 2021 WL 122216, at *12 (N.D. Cal. Mar. 31, 2021) (rejecting suggestion that YouTube acted in bad faith and that its conduct was therefore not protected by Section 230(c)(2)(A)). But conclusory assertions are all that plaintiffs offer. Plaintiffs accuse Meta of participating in a "coordinated campaign to suppress, silence, and destroy the reputations and livelihoods of" plaintiffs. Compl. ¶ 3. Yet this bold claim, without any factual allegations to back it up, cannot overcome Section 230(c)(2)(A)'s protections. And even if there were substance to that allegation, it would simply establish that Meta ***and others*** found plaintiffs' content objectionable. It would in no way undermine the fact that Meta itself subjectively "consider[ed]" plaintiffs' content "objectionable" and accordingly removed their accounts from Instagram. 47 U.S.C. § 230(c)(2)(A). Because "[t]he complaint contains no plausible factual allegations suggesting that [Meta] did not consider [plaintiffs' accounts] objectionable and/or contrary to its stated policies and guidelines, or that it removed, restricted access to,

or demonetized [plaintiffs' accounts] in bad faith," Section 230(c)(2) bars plaintiffs' claims. *Daniels*, 2021 WL 1222166, at *12.

The Section 230 analysis is not a close call. But even if it were, this Court should "resolve[] [it] in favor of immunity" because "[S]ection 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley*, 521 F.3d at 1174–75. Plaintiffs "cannot allege enough facts to overcome Section 230 immunity," so their "claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).

### B.    The First Amendment Bars Plaintiffs' Claims.

Plaintiffs also cannot proceed with their suit because they seek to hold Meta liable for its constitutionally protected speech. Plaintiffs' fundamental complaint is that they disagree with Meta's decision to remove them from Instagram, based on Meta's assessment of plaintiffs' online content and offline conduct. *See, e.g.*, Compl. ¶ 1 ("This case arises from Defendant Meta Platforms, Inc.'s … decision to deplatform [p]laintiffs … from its social media platforms."); *id.* ¶¶ 32–33 (complaining that plaintiffs were not given "an opportunity to address or rebut" Meta's determination that plaintiffs violated the DOI policy). When Meta "decide[s] which third-party content [its] feeds will display," however, it is "making [an] expressive choice[]." *Moody v. NetChoice*, 603 U.S. 707, 740 (2024). And Meta's publication choices—"whether fair or unfair"—are protected by the First Amendment. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Removing plaintiffs' Instagram accounts "advance[d] that right" and "assist[ed Meta] in the exercise of that right." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014).

As the Ninth Circuit has recognized, "Meta has a First Amendment right to use its platform to promote views it finds congenial and to refrain from promoting views it finds distasteful[.]" *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 759 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2846 (2025). Accordingly, courts in this district routinely dismiss claims challenging Meta's and other technology companies' decisions to remove accounts or content because those "are the exact sort of 'editorial decisions' cases like *NetChoice* have identified as a First Amendment right." *Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860, at *5 (N.D. Cal. June 10, 2025); *see also, e.g.*, *Kennedy v. Meta*

*Platforms, Inc.*, 2024 WL 4031486, at \*17 (N.D. Cal. Sept. 3, 2024) ("Meta's content moderation decisions ... are protected by the First Amendment."); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1188 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (finding that "Twitter has important First Amendment rights that would be jeopardized by a Court order telling Twitter what content-moderation policies to adopt and how to enforce those policies"). Because the First Amendment protects Meta's decision to remove plaintiffs' accounts, plaintiffs' claims are foreclosed.

### C.    The Instagram Terms Of Use Expressly Bar Plaintiffs' Claims.

The Court should also dismiss this case because the Instagram Terms of Use foreclose plaintiffs' suit. The Terms of Use authorize Meta to "remove any content or information … if [Meta] believe[s] it violates the[] Terms of Use [or] … [the] Community Standards." Allen Decl., Ex. 3, § 6 (complete Instagram Terms of Use).[4] Further, the Terms of Use include a limitation of liability that expressly bars plaintiffs from bringing the claims in their complaint. *See* Compl., Ex. A. The provision states that Meta "won't be responsible ('liable') for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we know they are possible." *Id.* Notably, and fatally to plaintiffs' case here, "[t]his includes when we delete your content, information, or account." *Id.*

Each of plaintiffs' claims arise from Meta's allegedly wrongful removal of their accounts from Instagram, which plaintiffs agree was "governed by the Instagram Terms of Use." Compl. ¶¶ 44–45; *see also id.* ¶¶ 1, 78, 123. And plaintiffs seek damages for that alleged wrongful termination of their accounts. *See id.* ¶¶ 72, 82, 91, 96, 109, 116, 121, 128, 134, 138, 143, 144–45. So each of "these claims are barred by [Instagram's] terms of [use], which expressly disclaim [Meta's] responsibility" for any damages plaintiffs allegedly suffered. *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017); *see also Young v. Meta Platforms, Inc.*, 2025 WL 2930979, at \*3 (N.D. Cal. Oct. 15, 2025) ("The Court therefore GRANTS the motion to dismiss Plaintiff's negligence, breach of contract, negligent

---

[4] This specific provision of the Terms of Use is omitted from Exhibit A to plaintiffs' complaint. Because plaintiffs attach the Terms of Use to their complaint and base their claims on those Terms, however, the entire Terms of Use are considered part of plaintiffs' complaint. *Knievel*, 393 F.3d at 1076. The omitted provisions are thus properly considered as part of Meta's facial argument that the complaint is insufficiently pled under Rule 12(b)(6).

META'S MOTION TO DISMISS AND STRIKE                    9                    CASE NO. 3:26-cv-00901-JSC

misrepresentation and breach of fiduciary duty causes of action, because on its face the Terms bar all of those claims."); *Johnson v. Meta Platforms, Inc.*, 2023 WL 5021784, at *4 (N.D. Cal. Aug. 4, 2023) (upholding the "limitation of liability provision in the Instagram TOU"); *Kennedy v. Meta Platforms Inc.*, 2024 WL 4565091, at *3 (N.D. Cal. Oct. 23, 2024) ("[I]t is clear that several of [plaintiff's] causes of action are … precluded by the Terms of Service and Terms of Use."); *Karam v. Meta Platforms, Inc.*, 2025 WL 3079048, at *3–4 (N.D. Cal. Nov. 4, 2025) (same). Thus, plaintiffs' claims are barred by the very Terms of Use under which they sue.

### D. Plaintiffs' Claims Each Fail On Their Own Merits.

Even setting aside those multiple grounds on which the Court can dismiss as a matter of law, dismissal is independently warranted because the complaint fails to state any plausible claim to relief. Plaintiffs' complaint is devoid of any specific factual allegations in support of their claims. Instead, it contains only conclusory allegations and loose references to the elements of their respective claims that cannot withstand Rule 12(b)(6) scrutiny.

***Plaintiffs' § 1983 Claim.*** Plaintiffs allege that Meta violated their First Amendment rights by removing their Instagram accounts, "result[ing] in unconstitutional censorship and retaliation." Compl. ¶ 137. But "[t]hese claims fail as a matter of law because the First Amendment … do[es] not govern the conduct of private parties like [Meta]." *Shang v. Twitch Interactive, Inc.*, 2025 WL 56415, at *3 (N.D. Cal. Jan. 9, 2025) (Corley, J.); *accord Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) (First Amendment "prohibits only ***governmental*** abridgment of speech" (emphasis in original)). Courts thus "begin with the presumption that private conduct does not constitute governmental action." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020). When "a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment." *Halleck*, 587 U.S. at 812. A plaintiff may overcome that presumption in only "a few limited circumstances," such as when a private actor performs a "traditional, exclusive public function," when the government "compels the private entity to take a particular action," or when the government "acts jointly with the private entity." *Id.* at 809. Here, plaintiffs allege that Meta both worked jointly with the government to censor plaintiffs and was simultaneously coerced by the government into removing plaintiffs' accounts. Compl. ¶¶ 4, 10, 34, 86, 136. Both theories fall short.

META'S MOTION TO DISMISS AND STRIKE                    10                    CASE NO. 3:26-cv-00901-JSC

A "joint action" theory requires plausible allegations establishing either "the existence of a conspiracy" or that Meta "was a willful participant in joint action with" the government. *O'Handley*, 62 F.4th at 1159. Here, plaintiffs do not "name any public official or entity as a defendant" nor do plaintiffs otherwise "state any facts that plausibly suggest that [Meta was a] 'willful participant in joint action'" with any public official or entity. *Wescott v. Beresford Corp.*, 2022 WL 1062061, at *3 (N.D. Cal. Apr. 8, 2022) (Corley, J.). Mere allegations that Meta "act[ed] in and as part of a conspiracy and scheme," without "facts to support [the] claim of concerted action," are insufficient, so plaintiffs' "joint action" theory fails. *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1231 (9th Cir. 1996).

Plaintiffs cannot proceed under a coercion-based theory of state action for the same reasons. Coercion requires plaintiffs to "plausibly allege conduct that … could be reasonably understood to convey a threat of adverse government action in order to punish or suppress [their] speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024). But plaintiffs allege no specific conduct by any government actor, much less an unconstitutional threat designed to force Meta to remove plaintiffs' accounts. And in any event, "only the state actor, and not the private party, should be held liable for the constitutional violation that resulted from the state compulsion." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999). If Meta were coerced by the government into making a content-moderation decision, then "the government officials responsible for the coercion" would be the appropriate defendants, not Meta, "the ***victim*** of the alleged coercion." *Children's Health Def.*, 112 F.4th at 759.

The Section 1983 claim also fails because plaintiffs do not "allege facts sufficient for supporting a plausible inference that Meta took any action at all in response to" government coordination or coercion. *Rogalinski v. Meta Platforms, Inc.*, 2023 WL 7876519, at *2 (9th Cir. Nov. 16, 2023). Put differently, plaintiffs must plausibly allege a causal connection—that Meta's action was ***the result*** of unlawful government censorship. They do not. At best, plaintiffs allege that Meta took down their accounts, and separately, that "U.S. and international authorities" deemed them "dangerous figures." Compl. ¶ 7. But Meta does "not lose the right to" take down plaintiffs' accounts even if its determination that plaintiffs are dangerous hate-speech disseminators "happen[ed] to be shared by the government." *Children's Health Def.*, 112 F.4th at 759. Thus, the most "obvious alternative explanation" to plaintiffs' allegations of coordination and coercion is also the right one: Meta determined that plaintiffs violated its DOI policy

META'S MOTION TO DISMISS AND STRIKE               11               CASE NO. 3:26-cv-00901-JSC

and took their accounts down accordingly, as it has the right to do. *Eclectic Properties E., LLC*, 751 F.3d at 996.

Finally, plaintiffs' Section 1983 claim fails to the extent it is premised on federal (not state) action. Section 1983 "only provides a remedy against persons acting under color of state law," not when a defendant "acted pursuant to federal laws." *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008). Plaintiffs never identify specific government agencies or officials with whom Meta allegedly worked to remove plaintiffs' accounts, but their complaint generally references "Meta's leadership … admitt[ing] that its content enforcement decisions were influenced by direction or coordination with *federal* agencies, including the FBI." Compl. ¶ 8. And in opposing Meta's motion to transfer venue, plaintiffs alleged that government involvement made this case "a matter of *national* concern." *See* Dkt. 23 at 14. Plaintiffs' failure to allege state government involvement is yet another basis to dismiss their Section 1983 claim.

***Plaintiffs' Contract Claims.*** Plaintiffs bring three claims suggesting that Meta breached the Instagram Terms of Use and its related content policies by removing their accounts without notice and the opportunity to appeal: breach of contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel. *See* Compl. ¶¶ 69, 111, 123. None are plausible.

First, plaintiffs' breach of contract claim fails. Plaintiffs attach the allegedly applicable Instagram Terms of Use, Community Standards, and Privacy Policy to their complaint as Exhibits A, B, and C, respectively. *See* Compl. ¶¶ 44, 49. As a result, those policies are incorporated by reference into the complaint and are properly before the Court. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Plaintiffs "must accept the [policies they] incorporated into [their] pleading as a whole, not just those provisions that benefit [their] cause." *Caraccioli v. Facebook, Inc.,* 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017).

Plaintiffs' breach of contract claim fails because those policies give Meta the right to remove any account that Meta determines violates its policies. The Instagram Terms of Use allow Meta to "refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Meta Products and Meta Company Products) immediately." Compl., Ex. A. And those same Terms of Use, in a provision omitted from plaintiffs' Exhibit A, provide that Meta "can remove any content or

META'S MOTION TO DISMISS AND STRIKE                              12                              CASE NO. 3:26-cv-00901-JSC

information [a user] share[s] on the Service *if we believe that it violates* these Terms of Use [or] our policies (including *our Community Standards*) ….” *See* Allen Decl., Ex. 3 § 6. Thus, once Meta determined that plaintiffs violated its Community Standards (including its DOI policy), it “had the contractual right to terminate [p]laintiff[s’] account[s.]” *Zhang*, 2023 WL 5493823, at *5; *see also* Allen Decl., Ex. 3 § 6; Compl., Ex. B (Community Standards incorporating the DOI policy).

Likewise, plaintiffs’ own complaint establishes that Meta was not required to provide plaintiffs with pre-removal notice or an appellate review process. Plaintiffs concede that the Community Standards explained that “[a]ccounts that don’t follow our Community Guidelines or Terms of Use may be disabled *without warning*.” Compl. ¶ 50. Plaintiffs also concede they were warned that Meta could “permanently remove an account that repeatedly violates the Community Guidelines or Terms of Use.” *Id.* And although they quote the “Instagram Community Standards” as stating that users “*may* be able to appeal” account removals, that conditional statement obviously does not create a right to review. *Id.*; *see Lowenberg v. Ill. Mut. Life Ins. Co.*, 2022 WL 3925298, at *3 (N.D. Cal. Aug. 30, 2022) (“Giving effect to every word in the contract, … ‘may’ is discretion[ary].”); *see also Biden v. Texas*, 597 U.S. 785, 802 (2022) (“[The Supreme Court] has repeatedly observed that the word ‘may’ clearly connotes discretion.”).

Plaintiffs’ only remaining allegations in support of their notice-and-review theory are inaccurate, incomplete, or out of context. Plaintiffs allege that the Community Standards included a promise from Meta to “let you know when something you posted goes against our Community Standards.” *Id.* ¶ 51. But that statement is from elsewhere on Meta’s website, and it is related to removing specific pieces of content posted on Meta’s services, not accounts. *See* Allen Decl., Ex. 4 (Meta, *Taking Down Violating Content*). Meta’s DOI policy, which plaintiffs concede was incorporated into the Instagram Terms of Use, considered plaintiffs’ “online and offline” conduct and led to the removal of their accounts outright, not just discrete posts. *See* Compl. ¶ 49, *id.* Ex. B (incorporating DOI policy); Allen Decl., Ex. 1 at 1 (DOI Policy). Plaintiffs also quote what they mistakenly call the “Meta Terms of Use” as promising that when Meta suspends or terminates a user’s account, it will “let [the user] know and explain any options [the user has] to request a review.” Compl. ¶ 52. Again, that is wrong. There are no “Meta Terms of Use.” There are *Instagram* Terms of *Use*, and there are *Meta* Terms of *Service*. The different sets of terms govern different services, with the Meta Terms of Service explicitly stating that they do not apply to

Instagram.  Allen Decl., Ex. 5 at 1 (Meta Terms of Service explaining that "use of Instagram is subject to the Instagram Terms of Use").  And the language plaintiffs quote is from the inapplicable Meta Terms of Service—which plaintiffs do not attach to their complaint or otherwise attempt to incorporate into the complaint in any event.  Because there is no plausible allegation of breach, plaintiffs' breach of contract claim should be dismissed.

Second, plaintiffs' claim for breach of implied duty of good faith fails by plaintiffs' own allegations.  "[W]hen there is a contractual relationship between the parties, 'the implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract.'"  *Blash v. Wells Fargo Bank*, 2015 WL 12791376, at *4 (C.D. Cal. Feb. 26, 2015).  Here, the contractual rights that plaintiffs purport to enforce do not exist, and plaintiffs cannot rely on a breach of implied duty of good faith and fair dealing claim to create new contractual rights.  *Id.*  Further, "while a plaintiff may bring claims for both breach of contract and breach of the implied covenant, when both claims rely on the same alleged acts and seek the same relief, the Court may disregard the breach of the implied covenant claim as superfluous."  *Putian Authentic Enter. Mgmt. Co., Ltd v. Meta Platforms, Inc.*, 2022 WL 1171034, at *7 (N.D. Cal. Apr. 19, 2022).  Plaintiffs' claim here is based on the same conduct (removal of their Instagram accounts) and seeks the same relief (money damages) as their breach of contract claim.  *See* Compl. ¶¶ 68–72, 110–16.  This claim must be dismissed.

Third, plaintiffs' promissory estoppel claim also fails.  "[T]he same allegations that give rise to a breach of contract claim cannot also give rise to a claim for promissory estoppel," because "the latter is predicated on a promise … in lieu of" a contract.  *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1041 (N.D. Cal. 2012).  Plaintiffs' breach of contract and promissory estoppel claims are based on the same allegations that Meta violated the Instagram Terms of Use and Community Standards when it removed plaintiffs' Instagram accounts, so both claims cannot survive.  *See* Compl. ¶¶ 71, 123.  Plaintiffs also fail to specifically allege any "promise clear and unambiguous in its terms."  *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901 (Cal. 2005); *see Smith v. City & Cnty. of San Francisco*, 225 Cal. App. 3d 38, 48 (Cal. 1990).  They simply allege that Meta "has made clear and unambiguous promises to [p]laintiffs through its Terms of Use and Community Standards, which promises set forth [d]efendant's

obligations to [p]laintiffs regarding termination of services." Compl. ¶ 123. But that vague, conclusory allegation is insufficient to state a claim for promissory estoppel. *See Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1130–31 (N.D. Cal. 2009). Nor *can* plaintiffs plausibly plead any such promise. As explained above, the Instagram Terms of Use make no promise of unfettered access, pre-removal notice, or a right to appeal Meta's removal decisions. The promissory estoppel claim must be dismissed.

*Plaintiffs' Tortious Interference Claim.* Plaintiffs' tortious interference claim fails because it cannot arise from Meta's removal of plaintiffs' accounts from Instagram. An act giving rise to liability for tortious interference must be "wrongful by some legal measure other than the fact of interference itself," meaning the defendant's conduct must be "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Dolin v. Facebook, Inc.*, 2018 WL 2047766, at \*4 (N.D. Cal. May 2, 2018). Removing plaintiffs' Instagram accounts was not an independently wrongful act, but rather "the result of a commercial entity pursuing commercial objectives." *Straw v. Facebook*, 2025 WL 2597018, at \*7 (N.D. Cal. Sept. 8, 2025). Indeed, as established above, the U.S. Constitution and federal statutory law *protect* Meta's removal of plaintiffs' Instagram accounts. Further, plaintiffs' "claim is undermined by" their "agreement to abide by" the Instagram Terms of Use and Community Standards, which authorized Meta's removal of plaintiffs' accounts. *Dolin*, 2018 WL 2047766, at \*4.

Nor could plaintiffs otherwise plausibly allege tortious interference. Plaintiffs must allege facts to show "an economic relationship between plaintiff[s] and a third party with the probability of future economic benefit to plaintiff[s]," Meta's "knowledge of the relationship," Meta's intent to disrupt that relationship, and "economic harm to the plaintiff proximately caused" by "actual disruption of the relationship." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008); *see also Dolin*, 2018 WL 2047766, at \*3. Plaintiffs' conclusory allegation that "Meta was fully aware of [their] economic business relationships" because "[p]laintiffs' [commercial] activities were taking place on Meta's own social media platforms," Compl. ¶ 85, is insufficient as a matter of law. "Meta's general awareness that [plaintiffs'] Instagram account was a business account does not satisfy [this] element of a tortious interference claim." *Johnson*, 2023 WL 5021784, at \*4; *see also Dolin*, 2018 WL 2047766, at \*4 (same). And "the Complaint nowhere alleges that [Meta] had the specific intent to interfere with [p]laintiff's prospective economic relationships." *Straw*, 2025 WL 2597018, at \*7. Plaintiffs' tortious interference claim fails.

META'S MOTION TO DISMISS AND STRIKE                    15                    CASE NO. 3:26-cv-00901-JSC

***Plaintiffs' False Light Claim.*** Plaintiffs' false light claim fails because they do not identify any "public disclosure" by Meta that "place[d] plaintiff in a false light in a manner highly offensive to a reasonable person." *Arminak v. Arminak & Assocs., LLC*, 2016 WL 10788359, at *19 (C.D. Cal. Dec. 7, 2016). Plaintiffs must also "allege facts showing that defendants acted negligently in failing to learn whether the publicized fact placed him in a false light." *Brahmana v. Lembo*, 2010 WL 965296, at *4 (N.D. Cal. Mar. 17, 2010). Here, however, plaintiffs allege only that Meta "malicious[ly]" "through public statements and implied messaging, falsely portrayed [p]laintiffs as violent, misogynistic, and criminal." Compl. ¶ 140. Plaintiffs do not specify what "public statements" form the basis of this claim. *Id.* In fact, the only act by Meta identified in the complaint is the removal of plaintiffs' Instagram accounts, which is not itself a provably false statement. At most, plaintiffs are implicitly alleging that Meta assessed plaintiffs' online and offline behavior and came away convinced that plaintiffs' content and conduct constituted the sort of "violent, misogynistic, and criminal" rhetoric and activity that Meta's DOI policy prohibits. *Id.* But Meta's determinations regarding its own policies are not "provably false factual imputation," either. *Silva v. Hearst Corp.*, 1997 WL 33798080, at *2 (C.D. Cal. Aug. 22, 1997); *see also, e.g.*, *Skidmore v. Regents of Univ. of Cal.*, 2021 WL 843195, at *2 (N.D. Cal. Mar. 5, 2021) (similar); *Benefield v. Bryco Funding, Inc.*, 2014 WL 2604363, at *6 (N.D. Cal. June 10, 2014) (similar). Thus, plaintiffs' false light claim fails too.

***Plaintiffs' Intentional Infliction of Emotional Distress Claim.*** An intentional infliction of emotional distress claim requires that the "defendant engaged in extreme and outrageous conduct (conduct so extreme as to exceed all bounds of decency in a civilized community) with the intent to cause, or with reckless disregard to the probability of causing, emotional distress." *Berry v. Frazier*, 90 Cal. App. 5th 1258, 1273 (2023), *as modified on denial of reh'g* (May 15, 2023). Allegations that Meta "disabl[ed] [plaintiffs'] account[s], [did] not properly engag[e] with [plaintiffs] to address the issue, and destroy[ed] the content associated with [their] account[s]" are insufficient "as a matter of law" because such conduct is "not outrageous." *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 785–86 (N.D. Cal. 2021). Moreover, plaintiffs do not plausibly allege that Meta removed plaintiffs' accounts "with the intent to cause, or with reckless disregard to the probability of causing, emotional distress." *Berry*, 90 Cal. App. 5th at 1273. At best, plaintiffs allege that Meta was "intentional and grossly negligent" in removing their Instagram

META'S MOTION TO DISMISS AND STRIKE                    16                    CASE NO. 3:26-cv-00901-JSC

accounts, Compl. ¶ 99, but this Court is "not required to accept such conclusory allegations as a matter of law," *King v. Facebook, Inc.*, 2023 WL 5318464, at *2 (9th Cir. Aug. 18, 2023). This claim thus fails and should be dismissed.

**_Plaintiffs' Negligent Misrepresentation & Fraud Claims._** Plaintiffs also cannot prevail on their claims for negligent misrepresentation and fraud because they do not plausibly allege any false representations by Meta. Plaintiffs allege that "Meta made false statements in its public policies about neutrality and the availability of appeal," Compl. ¶ 118, but as explained above, Meta never represented that plaintiffs would have any such rights, and Meta's policies explicitly grant it the right to determine for itself whether plaintiffs violated Meta's policies. Because they fail to allege any false representation, plaintiffs necessarily fail to allege that Meta made any such representation "without reasonable ground for believing [it] to be true," *Cutler v. Rancher Energy Corp.*, 2014 WL 1153054, at *7 (C.D. Cal. Mar. 11, 2014), let alone that Meta acted with "intent to deceive" its users, *Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F.Supp.2d 1141, 1151 (E.D. Cal. 2013). And in any event, plaintiffs' complaint does not identify "such facts as the times, dates, places, benefits received, and other details of the alleged" fraud, as Rule 9(b) requires. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also Bogard v. TikTok Inc.*, 2025 WL 604972, at *12 (N.D. Cal. Feb. 24, 2025) (dismissing negligent misrepresentation and fraud claims for lack of specificity). Thus, their negligent misrepresentation and fraud claims fail.

**_Plaintiffs' Unruh Civil Rights Act Claim._** The Unruh Civil Rights Act only applies to "persons within the jurisdiction of" California. Cal. Civ. Code § 51(b); *see also Moore v. Greyhound Bus Lines, Inc.*, 793 F. App'x 595, 595 (9th Cir. 2020). Plaintiffs plainly allege that they are "residents of Romania" and do not allege any interaction with California. Compl. ¶ 12. Plaintiffs have therefore "failed to show [they are] person[s] within the jurisdiction of California" and their Unruh claims should be "dismissed with prejudice." *Brooke v. Rihh LP*, 2020 WL 788889, at *5 (N.D. Cal. Feb. 18, 2020).

**_Plaintiffs' Unfair Competition, Unjust Enrichment, and Quantum Meruit Claims._** Plaintiffs' claims under California's Unfair Competition Law ("UCL") and their claims for common law unjust enrichment and quantum meruit all share a fatal defect: plaintiffs have not pled that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("[T]he requisite inadequacy of legal remedies[] appl[ies] when a party requests restitution under the UCL."); *Sky Sleep*

*Lab, Inc. v. Cigna Health & Life Ins. Co.*, 2025 WL 736496, at *2 (C.D. Cal. Jan. 23, 2025) (dismissing "equitable claims for *quantum meruit* and unjust enrichment" for "fail[ing] to adequately allege that [plaintiff] lack[ed] an adequate remedy at law"); *see also Nguyen v. Nissan N. Am., Inc.*, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (collecting cases). Instead, plaintiffs seek money damages for the removal of their Instagram accounts—the same conduct for which plaintiffs seek equitable relief. An equitable claim that "relies upon the same factual predicates as a plaintiff's legal causes of action … is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014), *order corrected on denial of reconsideration,* 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014). This is true even when, as here, plaintiffs' "other [legal] claims fail." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017).

These equitable claims also fail on their merits. First, plaintiffs' UCL claim fails because plaintiffs are not California residents, nor do they allege that they were harmed in California, so the UCL does not apply. *Young v. ByteDance Inc.*, 2023 WL 3484215, at *7 (N.D. Cal. May 15, 2023); *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1033 (2022). Additionally, the UCL does not permit suits for "'lost business opportunity' or 'lost profits.'" *Lee v. Luxottica Retail N. Am., Inc.*, 65 Cal. App. 5th 793, 807 (2021); *see also Bogard*, 2025 WL 604972, at *15–16. Plaintiffs' allegations that Meta's removal of their Instagram accounts cost them lost profits thus cannot support a UCL claim.

Second, plaintiffs' unjust enrichment and quantum meruit claims fail for the additional reason that plaintiffs received exactly what they were entitled to under Meta's policies: plaintiffs were granted access to Instagram, subject to Meta's discretionary authority to remove plaintiffs' accounts if Meta determined that plaintiffs violated Meta's policies. "There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1371 (2010); *see also, e.g.*, *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952) (same). Because Meta's conduct was governed (and authorized) by the very same contract plaintiffs attempt to enforce, plaintiffs have no equitable claims.

## II. THE COURT SHOULD STRIKE PLAINTIFFS' STATE LAW CLAIMS UNDER CALIFORNIA'S ANTI-SLAPP LAW.

In addition to dismissal under Rule 12(b)(6), the Court should strike plaintiffs' state law claims pursuant to California's anti-SLAPP statute. That statute "allow[s] for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation," *Herring Networks, Inc.*, 8 F.4th at 1155, and must "be construed broadly," *Greater Los Angeles Agency on Deafness, Inc.*, 742 F.3d at 421. In federal court, a pleading-stage anti-SLAPP motion requires a two-step analysis. The first question is whether the suit arises from the defendant's protected free speech activity connected to an issue of public interest. *Id.* at 422. The second is whether the plaintiff has failed to state a claim, which is assessed "in the same manner as a motion under Rule 12(b)(6)." *Herring Networks, Inc.,* 8 F.4th at 1156. Here, both conditions are met.

***Plaintiffs Target Meta's Protected Conduct in Connection with a Public Interest.*** As explained above, all of plaintiffs' claims arise from Meta's own First Amendment activity. *See Greater Los Angeles Agency on Deafness, Inc.*, 742 F.3d at 422 ("An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right."). Without Meta's exercise of its own editorial decisions regarding the accounts, plaintiffs "would have no reason to sue." *See id.* at 423.

Meta's First Amendment-protected editorial decisions were also "in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). "Any issue in which the public is interested" is one of public interest. *Stossel v. Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 759 (N.D. Cal. 2022). This requirement is satisfied "where the expressive work concern[s] a person or entity in the public eye, conduct that could directly affect a large number of people beyond the direct participants, or [a] topic of widespread, public interest." *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1024 (C.D. Cal. 2022)). Likewise, "[h]igh profile individuals ... are persons in the public eye and of public interest[.]" *Nunes v. Meredith*, 2022 WL 2214205, at *5 (E.D. Cal. June 21, 2022). There can be no dispute that plaintiffs—who (in their own words) "collectively commanded an audience of tens of millions," "reached tens of millions of followers," and "were among the most visible public figures on Meta's platform," Compl. ¶¶ 2, 24—were high-profile individuals. So Meta's decisions regarding their online accounts are undoubtedly a matter of public interest. Moreover, Meta removing offensive accounts from its services is not simply "in

META'S MOTION TO DISMISS AND STRIKE                    19                    CASE NO. 3:26-cv-00901-JSC

connection" with an issue of public interest—rather, it is itself "without question a pressing public interest." *Cf. Stackla, Inc. v. Facebook, Inc.*, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019) (denying attempt to enjoin "Facebook's ban of allegedly-abusive entities from its platforms").

***Plaintiffs' Allegations Are Insufficient.*** Plaintiffs' claims fail to overcome a Rule 12(b)(6) motion because, as explained above, they are preempted by Section 230, cannot be squared with the First Amendment, are barred by the Terms of Use upon which plaintiffs rely, and fail on their own merits.

Both elements of California's anti-SLAPP law are met, and the Court should strike plaintiffs' state law claims.

## III.    THE COURT SHOULD ENTER JUDGMENT FOR META WITH PREJUDICE.

Plaintiffs cannot amend their allegations to remedy the complaint's shortcomings. In these circumstances, courts routinely dismiss with prejudice and without leave to amend. *See, e.g.*, *King*, 572 F. Supp. 3d at 795 (dismissing claims barred by Section 230 with prejudice because "it would be futile for [the plaintiff] to try to amend the claim[s]"); *Brittain v. Twitter, Inc.*, 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (same); *Smith v. Santa Rosa Democrat*, 2011 WL 5006463, at *7 (N.D. Cal. Oct. 20, 2011) ("[T]he purpose of the anti-SLAPP statute is to provide for a speedy resolution of claims which impinge on speech protected by the First Amendment. ... In these circumstances, leave to amend is not necessary or appropriate."); *Flores v. Emerich & Fike*, 2006 WL 2536615, at *10 (E.D. Cal. Aug. 31, 2006) (similar). The Court should dismiss plaintiffs' complaint with prejudice and enter judgment for Meta.

### CONCLUSION

For these reasons, this Court should dismiss the complaint and strike plaintiffs' state law claims with prejudice.

DATED: February 27, 2026

Respectfully submitted,

/s/ *K. Winn Allen, P.C.*

Laura E. Vartain Horn, SBN 258485
KIRKLAND & ELLIS LLP
laura.vartain@kirkland.com
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: 415.439.1400

Allison W. Buchner, SBN 253102
KIRKLAND & ELLIS LLP
allison.buchner@kirkland.com
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: 310.552.4200

K. Winn Allen, P.C. (*pro hac vice*)
Yaffa A. Meeran (*pro hac vice*)
KIRKLAND & ELLIS LLP
winn.allen@kirkland.com
yaffa.meeran@kirkland.com
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: 202.389.5000

*Attorneys for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

On February 27, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

/s/ K. Winn Allen, P.C.
K. Winn Allen, P.C.