UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMORY ANDREW TATE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS INC., et al., <br><br> Defendants. | Case No.  3:26-cv-00901-JSC <br><br> **ORDER RE: MOTION TO DISMISS AND STRIKE STATE CLAIMS** <br><br> Re: Dkt. No. 43 |

Brothers Andrew and Tristan Tate are "controversial," "internationally known entrepreneurs, commentators, and media personalities."  (Dkt. No. 1-1, Complaint at ¶¶ 1, 3.[1])  Following Meta's termination of their six Instagram social media accounts, the Tate brothers filed suit bringing California state law claims and a 42 U.S.C. § 1983 claim for violation of their First Amendment rights.  Meta moves to dismiss and strike insisting Plaintiffs' claims are barred by Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230, the First Amendment, Instagram's Terms of Use, and for failure to state a claim.  (Dkt. No. 43.)  Having considered the parties' arguments and having had the benefit of oral argument on April 23, 2026, the Court GRANTS Meta's motion to dismiss.  Plaintiffs' claims are barred by Section 230, among other deficiencies.

## BACKGROUND

### A.    Complaint Allegations

The Tate brothers maintained several social media accounts which they used to market their brand and business ventures.  (Complaint at ¶¶ 19-24.)  Meta terminated their accounts and

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

"banned [them] for promoting' dangerous individuals or organizations' or for inciting misogyny." (*Id*. at ¶ 32.)  Plaintiffs insist "this was not an isolated enforcement action grounded in neutral application of its Terms of Use." (*Id*. at ¶ 3.)  At the time Meta terminated their accounts, "both Plaintiffs were subject[] to intense international scrutiny" following their house arrest in Romania in connection with "a human trafficking and sexual exploitation" investigation.  (*Id*. at ¶¶ 35-36.) Plaintiffs maintain their deplatforming "was part of a broader, ideologically motivated campaign, carried out under governmental and corporate pressure, to marginalize dissenting or controversial viewpoints—particularly those of prominent male figures criticizing modern social norms."  (*Id*. at ¶ 34.)   The "deplatforming not only silenced the Plaintiffs but immediately severed them from critical commercial tools and millions of followers causing them substantial and irreplaceable financial loss and damage."  (*Id*. at ¶ 27.)  Plaintiffs seek in excess of $50 million in compensatory damages.  (*Id*. at ¶ 144.)

### B.    Procedural Background

Plaintiffs filed this suit in the Los Angeles County Superior Court bringing claims for: (1) breach of contract; (2) violation of Cal. Bus. & Prof. Code § 17200; (3) tortious interference; (4) unjust enrichment/quantum meruit; (5) intentional infliction of emotional distress; (6) violation of Cal. Civ. Code § 51(b); (7) breach of implied covenant of good faith and fair dealing; (8) negligent misrepresentation; (9) promissory estoppel; (10) fraud; (11) violation of 42 U.S.C. § 1983 based on the First Amendment; and (12) false light.  (Dkt. No. 1-1.)  Meta removed the action to the District Court for the Central District of California based on federal question jurisdiction and diversity jurisdiction, *see* 28 U.S.C. §§ 1331, 1332.  (Dkt. No. 1.) Meta then moved to transfer venue to the District Court for the Northern District of California, which the court granted.  (Dkt. Nos. 22, 27.)  Following transfer, Meta filed the now pending motion to dismiss all claims and to strike Plaintiffs' state law claims under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(b)(1).  (Dkt. No. 43.)

### C.    Incorporation by Reference

A document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United*

*States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (cleaned up).  Plaintiffs' Complaint refers to Instagram's Terms of Use, the Community Standards, and Privacy Policy, and these documents are attached as Exhibits A-C to the Complaint.  (Complaint at ¶¶ 49-52; Ex A (Dkt. No. 1-1 at 25); Ex B (Dkt. No. 1-1 at 42); Ex. C (Dkt. No. 1-1 at 50).)  Further, the Community Standards include a provision for "Dangerous Organizations and Individuals" ("DOI Policy") which is accessible via a hyperlink. (Dkt. No. 1-1 at 47; *see also* Complaint at ¶ 32 (alleging Meta terminated the accounts in part for "promoting' dangerous individuals or organizations'").)  Meta submitted the DOI policy as Exhibit 1 to the Declaration of K. Winn Allen.  (Dkt. No. 44-1.)  Thus, the Complaint "necessarily relies" on these documents and the parties do not dispute their authenticity.[2] *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  So, the Court incorporates these documents by reference.

## DISCUSSION

### A.    Section 230 of the Communications Decency Act

Section 230 of the CDA "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC ("Roommates")*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).  Under the statute, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).  Meta insists Section 230(c)(1) bars Plaintiffs' claims because, regardless of how the claims are styled, they are all predicated on Meta's termination of their accounts—a content-based decision that Section 230

---

[2] Meta contends Meta Platforms Ireland Limited, which has its own terms of use and community standards, is the proper party for suits by Instagram users across the European Region, but for purposes of this motion Meta assumes, without waiving any objections, the documents Plaintiffs attach control.  (Dkt. No. 43 at 11 n.2.)

United States District Court
Northern District of California

makes immune from liability.

Under Section 230(c)(1), "providers or users of an interactive computer service shall not be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Thus, Section 230 "protects from liability (1) a provider of an interactive computer service (2) whom a plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider." *Brittain v. Twitter*, Inc., No. 19-CV-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019) (citing *Barnes v. Yahoo!*, Inc., 570 F.3d 1096, 1100-01 (9th Cir. 2009), as amended (Sept. 28, 2009)).

Plaintiffs do not dispute the first and third requirements are met here as a matter of law. Meta, as Instagram's operator, is an interactive computer service provider. *See Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) (collecting cases finding Facebook (Meta) is an interactive computer service provider). And, the information at issue (Plaintiffs' Instagram accounts) was provided by another (Plaintiffs). *See id.* at 1117-18 (similarly concluding the third requirement is met when the "FAC is unequivocal that Plaintiffs seek to hold Facebook liable for removing FAN's Facebook account, posts, and content, and that this content was provided by FAN and not Facebook").

The second requirement—that Plaintiffs seek to treat Meta as a publisher or speaker—is also satisfied as a matter of law. "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. "Thus, a publisher reviews material submitted for publication, perhaps edits it for style or technical fluency, and then decides whether to publish it." *Id.* So, Section 230(c)(1) immunity extends to service providers' activities moderating third-party content, such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third party content." *Id.* "[I]t is immaterial whether this decision comes in the form of deciding what to publish in the first place or what to remove among the published material." *Id.* at 1102 n.8. In other words, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170–71.

Plaintiffs challenge Meta's decision to terminate Plaintiffs' Instagram accounts. Meta's

4

United States District Court
Northern District of California

conduct "can be boiled down to deciding whether to exclude material that third parties seek to post online," and is therefore immune from liability under section 230. *Id.; see also Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at \*5 (N.D. Cal. May 9, 2019) (holding Facebook's "decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct."); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (affirming dismissal of negligence and gross negligence claims profiles under Section 230 arising from MySpace's deletion of user); *Zhang v. Twitter Inc.*, No. 23-CV-00980-JSC, 2023 WL 5493823, at \*4 (N.D. Cal. Aug. 23, 2023) (finding "claims relate[d] to the suspension of his account and the alleged failure to suspend the third-party user's account, whether they are styled as breach of contract, tort, or fraud claims" were barred under Section 230), aff'd, No. 23-16125, 2025 WL 66050 (9th Cir. Jan. 10, 2025); *Lewis v. Google LLC*, 461 F.Supp.3d 938, 955 (N.D. Cal. 2020) (dismissing under Section 230 the plaintiff's First Amendment and implied covenant claims because they seek to hold YouTube liable for censoring and demonetizing the plaintiff's videos) ), aff'd, 851 F. App'x 723 (9th Cir. 2021); *Brittain*, 2019 WL 2423375, \*3 (dismissing under Section 230 the plaintiff's First Amendment and tortious interference claims because they "arise out of Twitter's deletion of the [plaintiff's] Accounts" and thus "seeks to treat Twitter as a publisher").

Plaintiffs' insistence Meta cannot invoke Section 230(c)(1) because their claims sound in contract is unpersuasive. *See Barnes,* 570 F.3d at 1107-08 (holding the plaintiff's promissory estoppel claim was not barred by Section 230 because the plaintiff did "not seek to hold [the defendant] liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached"). "What matters is not the name of the cause of action [but] whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Id.* at 1101–02. If "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker,' [] section 230(c)(1) precludes liability." *Id*. at 1102. The Complaint is replete with allegations challenging Meta's decision to "deplatform Plaintiffs," impose a "blanket ban and improper termination" thereby "sever[ing] them from critical commercial tools and millions of followers causing them substantial and irreplaceable financial loss and damage."

5

(Complaint at ¶¶ 1, 27, 31.)  Plaintiffs further allege their removal was "not an isolated enforcement action grounded in neutral application of [the] Terms of Use."  (*Id*. at ¶ 3.)  So, drawing all reasonable inferences from the Complaint's allegations in Plaintiffs' favor, the duty Plaintiffs allege Meta violated derives from Meta's decision not to publish Plaintiffs' content online and thus falls squarely within Section 230.

Consistent with these allegations, the Complaint does not state a contract claim. At oral argument, Plaintiffs represented Complaint Paragraphs 50, 51, and 52 contain the promises Meta allegedly breached when it terminated Plaintiffs' accounts without notice and without the ability to appeal.  But the allegations of these paragraphs do not support an inference Meta promised to provide notice before terminating Plaintiffs' Instagram accounts or an appeal right. (Complaint at ¶ 50 ("the Instagram Community Standards provide that 'If your Instagram account was disabled, you'll see a message telling you when you try to log in. Accounts that don't follow our Community Guidelines or Terms of Use may be disabled without warning'…[Terms of Use and Community Standards, Exhibit B]." ); ¶ 51 ("the Community Standards provide for notice and an appellate process indicating that, 'we will let you know when something you posted goes against our Community Standards'… [See Terms of Use, Exhibit A, and Community Standards, Exhibit B]"); ¶ 52 ("In the Meta Terms of Use, it provides in pertinent part as follows: 'Where we take such action we'll let you know and explain any options you have to request a review…' [Terms of Use, Exhibit A]").)

Even more troubling, when pressed at oral argument, Plaintiffs conceded the alleged promises set forth in these Complaint paragraphs are not contained within the documents as alleged in the Complaint.  For example, in Paragraph 51 Plaintiffs allege

> the Community Standards provide for notice and an appellate process indicating that, "we will let you know when something you posted goes against our Community Standards. Usually, this notice appears in your Feed when you log into Facebook or in your feed on Instagram." [See Terms of Use, Exhibit A, and Community Standards, Exhibit B].

(Dkt. No. 1-1 at ¶ 51.)  But, the quoted language is not included the Terms of Use or Community Standards attached to the Complaint, and Plaintiffs were unable to identify how that error was

United States District Court
Northern District of California

6

included in the Complaint or where the quoted language came from.

Further, Paragraph 52 alleges "In the Meta Terms of Use, it provides in pertinent part as follows: 'Where we take such action we'll let you know and explain any options you have to request a review…' [Terms of Use, Exhibit A]." (Dkt. No. 1-1 at ¶ 52.)  But, again, the quoted language is not included in the Terms of Use attached as Exhibit A to the Complaint as represented. This error is perhaps unsurprising given the Complaint Exhibit A Terms of Use are Instagram Terms of Use, not Meta Terms of Use as the Complaint alleges.  But, in any event, to the extent the quoted language is included in the Meta Terms of Service, those Terms of Service do not apply to Instagram accounts and so cannot form the basis for a contract action arising out of termination of the Instagram accounts. The Meta Terms of Service state they apply "to your access and use of Facebook, Messenger, and other products" but *not "your use of Instagram [which] is subject to the Instagram Terms of Use*."  (Dkt. No. 44-5 at 2 (emphasis added).[3]) So, Plaintiffs have not identified any contractual promise that applies to their Instagram accounts, let alone a promise not to terminate their Instagram accounts without prior notice or a promise to provide a right to appeal.

Further, even if Plaintiffs had identified a prior notice promise or right to appeal, they have failed to allege facts which plausibly support an inference that failure to provide the notice or appeal right—as opposed to Meta's termination of their accounts—caused their alleged damage. Instead, their Complaint's demand for $50 million in damages derives entirely from Meta's decision to remove their content. This is an additional reason their purported contract claims fail. *See, e.g., Castronuova v. Meta Platforms, Inc*., No. 4:24-CV-02523-YGR, 2025 WL 1914860, at *4 (N.D. Cal. June 10, 2025) (concluding the plaintiff's First Amendment, federal civil rights, UCL, and contractual claims—based on Meta's suspension of the plaintiff's Facebook account without warning—were barred by Section 230(c)(1));  *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020) (holding the plaintiff's contractual claims

---

[3] Because the Complaint "necessarily relies" on this document (despite attributing its contents to a different document) and the parties do not dispute its authenticity, the Court can consider it under the incorporation by reference doctrine. *Coto Settlement v. Eisenber*g, 593 F.3d 1031, 1038 (9th Cir. 2010).

alleging Facebook breached the terms of service by taking down their page and deleting their account were barred by Section 230(c)(1)); *King v. Facebook, Inc.*, No. 19-CV-01987-WHO, 2019 WL 4221768, at *1, *4 (N.D. Cal. Sept. 5, 2019) (concluding the plaintiff's claims alleging Facebook violated its terms of service in removing his posts and suspending his account were barred by Section 230(c)(1) and collecting cases re: same), aff'd, 845 F. App'x 691 (9th Cir. 2021).[4]

Accordingly, Meta has met its burden of showing that drawing all reasonable inferences from the Complaint in Plaintiffs' favor, Section 230(c)(1) bars all of Plaintiffs' claims as a matter of law.[5]  *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

### B.    Section 1983 Claim

Plaintiffs' Section 1983 claim based on violation of their First Amendment rights fails for a second, independent reason—they do not plausibly allege Meta violated the First Amendment. While "the First Amendment provides robust protection for free speech," "it has an important limitation: It 'prohibits only governmental abridgment of speech' and 'does not prohibit private abridgment of speech.'" *Children's Health Def. v. Meta Platforms, Inc*., 112 F.4th 742, 753 (9th Cir. 2024) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019)), *cert. denied*, 145 S. Ct. 2846 (2025).  Meta is a private actor and thus its conduct constitutes private abridgement of speech to which the First Amendment does not apply.  *See Children's Health Def.,* 112 F.4th at 754 ("Meta, the owner of Facebook, is a private corporation, not a government

---

[4] Plaintiffs reliance on *Enhanced Athlete Inc. v. Google LLC*, 479 F.Supp.3d 824 (N.D. Cal. Aug. 14, 2020), is unavailing  While the court there found the plaintiff's breach of the covenant of good faith and fair dealing claim was not barred by section 230, it relied on allegations that while the plaintiff had adhered to the terms of the contract, the defendant had not when it arbitrarily terminated the plaintiffs' accounts.  *Id.* at 830.  As discussed, Plaintiffs here have not identified any specific contractual terms Meta violated and instead make conclusory allegations as to Meta's violation of its "its contractual obligations."  (Complaint at ¶ 6.)  Further, Plaintiffs do not allege they complied with Meta's Terms of Use, but rather that Meta enforced the Terms of Use selectively.  (*Id.* at ¶¶ 3, 58.)

[5] Because the Court concludes Plaintiffs' claims are barred by Section 230(c)(1), it need not reach Meta's arguments they are also barred by Section 230(c)(2) and the First Amendment.  The Court likewise declines to address Meta's request to strike Plaintiffs' state law claims under California's Anti-SLAPP law as the claims are barred by Section 230(c)(1).

United States District Court
Northern District of California

agency."); *see also Halleck*, 587 U.S. at 812 ("when a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor.").

A private actor like Meta may nonetheless satisfy the Constitution's government actor requirement if one of four tests is satisfied:

(1) the private actor performs a traditionally public function;
(2) the private actor is a "willful participant in joint activity" with the government;
(3) the government compels or encourages the private actor to take a particular action; or
(4) there is a "sufficiently close nexus" between the government and the challenged action.

*Children's Health Def.*, 112 F.4th at 754 (cleaned up). Plaintiffs' conclusory allegations that Meta was "following directives, coercion, or encouragement from government actors" which "constituted state action and resulted in unconstitutional censorship and retaliation" fail to plausibly support an inference Meta was a government actor under any of these tests. (Dkt. No. 1-1 at ¶¶ 136-137.) Plaintiffs' contention they have made "specific" allegations of "joint action or significant encouragement" is specious. (Dkt. No. 46 at 18 (citing Complaint ¶¶ 4; 7-9; 136).) The Complaint's allegations refer vaguely to "government officials" (¶ 4); "U.S. and international authorities" (¶ 7); "federal agencies, including the FBI" who influence content decisions (¶ 8); "state actors" (¶ 9); and "governmental actors" (¶ 136). There are no factual allegations that support "an inference that the government 'is *responsible* for the specific conduct of which the plaintiff complains.'" *Children's Health Def.*, 112 F.4th at 754 (emphasis in original). Indeed, at oral argument, Plaintiffs conceded their vague allegations were insufficient to allege Meta acted in concert with a government actor. So, they do not plead a First Amendment violation.

Plaintiffs have also failed to properly plead their Section 1983 claim. To state a claim under Section 1983, a plaintiff must plead: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) *acting under color of state law*." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added). The Complaint does not identify any state actors; instead, it alleges "federal agencies, including the FBI" influenced Meta content decisions. (Dkt. No. 1-1 ¶ 8.) So, even apart from the lack of

United States District Court
Northern District of California

allegations showing Meta is a government actor, Plaintiffs do not even attempt to allege Meta acted "under color of state law." *See Lewis v. Google LLC*, 461 F. Supp. 3d 938, 955 (N.D. Cal. May 20, 2020) ("[E]ven if Plaintiff's allegations were sufficient to hold [Defendants] liable for conduct by the federal and by foreign governments, such allegations do not allege conduct under color of state law.").

Accordingly, Plaintiff's Section 1983 claim fails for failure to state a claim, in addition to Section 230 immunity.

### C.    Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires" because "the court must remain guided by the underlying purpose of Rule 15 ... to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  Leave to amend may be futile "where the plaintiff simply wishes to plead more specifically, and the claim would certainly be defeated even with the amendment."  *Brown v. Brita Prods. Co.*, No. 24-6678, 2026 WL 1028347, at *5 (9th Cir. Apr. 16, 2026) (cleaned up).

At oral argument, the Court questioned Plaintiffs at length about what they would allege if granted leave to amend.  Plaintiffs were unable to identify any facts they could allege which would plausibly support an inference Meta was contractually required to provide notice or an opportunity to appeal before it terminated their Instagram accounts. Indeed, as explained above, the "contract" terms their Complaint does allege do not appear in the documents Plaintiffs allege contain the terms.  And, despite an hour-long oral argument with many minutes of silence while Plaintiffs' counsel scrolled through all the potentially relevant documents on his computer, Plaintiffs could not identify any provision to support their assertion of a promise of prior notice and appellate rights.  Plaintiffs have no good faith basis for this assertion.

United States District Court
Northern District of California

Nor could Plaintiffs articulate a good faith basis for Meta's Section 1983 liability. Plaintiffs insisted they can maintain a Section 1983 claim because the federal actors acted in concert with state actors. But when questioned, Plaintiffs could not identify the state actors who were allegedly involved (any more than they could identify the federal actors involved beyond vague reference to the FBI); instead, they repeated their general "belief" state actors were involved.

Federal Rule of Civil Procedure 11(b) states that by "signing, filing, submitting or later advocating" for a "pleading, written motion, or other paper," an attorney certifies that:

> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

*Lake v. Gates*, 130 F.4th 1064, 1067–68 (9th Cir. 2025) (quoting Fed. R. Civ. P. 11(b)). Courts apply "an objective standard of reasonableness and do not consider the attorney's subjective good faith" when evaluating conduct under Rule 11. *Lake*, 130 F.4th at 1068 (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 892 F.2d 802, 811 (9th Cir. 1989) (holding that Rule 11 does not allow for a "pure heart, empty head" defense) (citation omitted)).

Plaintiffs' oral argument statements reveal neither they nor their counsel have a *factual* basis for alleging state actors were working in concert with federal actors and Meta to violate Plaintiffs' First Amendment rights. Nor do they have a factual basis for alleging Meta violated some contractual promise to provide advance notice prior to terminating Plaintiffs' Instagram account and not providing appellate rights, let alone a basis for alleging such breach caused $50 million in damages. Leave to amend would thus be futile. *See, e.g., Castronuova v. Meta Platforms, Inc.*, No. 4:24-CV-02523-YGR, 2025 WL 1914860, at *4 (N.D. Cal. June 10, 2025) (holding Section 230 immunity barred the plaintiff's First Amendment, federal civil rights, UCL, and contractual claims, and dismissing without leave to amend based on futility), appeal

11

dismissed, No. 25-4243, 2025 WL 2895601 (9th Cir. Aug. 15, 2025); *Brittain v. Twitter, Inc.*, No. 19-CV-00114-YGR, 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (dismissing the plaintiff's claims with prejudice when the "plaintiff cannot cure" the Section 230 "defect"); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 963 (N.D. Cal. 2020) (dismissing the plaintiff's claims under Section 230 "with prejudice because granting leave would be futile") ), aff'd, 851 F. App'x 723 (9th Cir. 2021); *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019) (dismissing with prejudice the plaintiff's First Amendment and UCL claims "because CDA immunity applies").

## CONCLUSION

For the reasons stated above, the Court GRANTS the motion to dismiss without leave to amend. The Court will enter judgment by separate order.

This Order disposes of Docket No. 43.

**IT IS SO ORDERED.**

Dated: April 28, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge